# Hamill's Appeal.

1. It is within the discretion of the Orphans' Court to grant or refuse a prayer for a review on the ground of after-discovered evidence.

2. A wife's right as a creditor of her husband must be clearly proved. This requirement is adequately met by proof that the husband was penniless, that the wife had $1200, and of the establishment by the joint action of both, in the husband's name, of a business requiring a liberal cash capital at the start.

3. Where a husband has received money of the wife, it will be presumed that he holds it in trust for her. The mere possession of a wife's money is no evidence, since the Act of 1848, that the title to it is vested in the husband.

4. Where the wife permitted the use of her money by her husband without any stipulation as to terms, and continued to live with him, and received support from the proceeds of the business in which her money was invested, she is only entitled to a return of the principal and not the interest.

January 16th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term 1878, No. 206.

Appeal of Ann Hamill from the decree of the court, dismissing her bill for the review of the decree of said court, upon the adjudication of her account as administratrix of William Hamill, deceased.

William Hamill died February 22d 1876, intestate, leaving a widow, the accountant, and three children by a former wife. The widow took out letters of administration and on the 28th of May 1877, she filed her account, which was audited June 25th 1877 by O'Brien, J., of the Orphans' Court, before whom the widow claimed that she was a creditor of the estate, and alleged that fourteen years previously, she had loaned her husband $1500, and six years thereafter $866.13 additional, both of which sums were due her with interest. The facts as found by the auditing judge were in substance these : that Ann Hamill, then Ann Dougherty, married decedent on July 15th 1862, at which time Mr. Hamill was a journeyman

harness-maker. That Mrs. Hamill, shortly before her marriage, had an establishment for the manufacture and sale of boys' clothing, which she sold to Jane Holmes for $500 cash; that in May 1861, she drew out of the Saving Fund $496.05; that she then owned and still owns, a house on Newton street, which yielded her a rent of from $13 to $20 per month.

Directly after the marriage, Mr. Hamill, in his own name, opened a pawnbroker's shop and with his wife's assistance continued the occupation from some time in July 1862, down to the day of his death, February 22d 1876. Immediately upon his decease, Mrs. Hamill took possession of the shop and goods and continued the business upon her own account.

The following was the testimony of some of the witnesses:

Francis McKeon. Knew deceased since 1843, intimately; he married Mrs. Hamill about fifteen years ago; was harness-maker, journeyman; means were limited; owned no real estate that I knew of, or personal estate except trifling. Knew Mrs. Hamill, the widow, since 1845; she had means when she married deceased; had a house; was in clothing business in South st. near Third st.; boys' clothing; after marriage they went into the pawnbroking business; carried it on till his death; fair business; lived in the house; don't think deceased had any money.

A. F. McGarry. Am pawnbroker; knew deceased twenty-five years; July or August 1862, he said he had sold gold; got large premium; said it exultingly; premium was in neighborhood of $200; he said this gold he sold was his wife's.

Geo. C. Lee. Was tenant of Mrs. Hamill, 1006 Newton st., at first $9, then $13 per month to $17. Total amount, $1100, from October 1862 to 1870.

Jane Holmes. I bought out Mrs. Hamill's business; boys' clothing; paid her $500 in July 1862, just before she was married; paid in bank-notes.

James McSorley. A few weeks before the marriage of decedent, Wm. Hamill (decedent) asked witness to lend him money to buy a wedding suit, but shortly afterward decedent told witness that he would not need the loan, as in a short time he expected to have the handling of a sum of money.

The widow claimed that the money was loaned by her to her husband, to carry on the pawnbroking business, and that it was received by him as a loan and held in trust for her use. The auditing judge disallowed the claim on the ground that the evidence did not sustain it, and awarded the one-third of the estate to the widow and the balance to the three children of decedent, in equal shares. Exceptions were filed to this adjudication, it being alleged, inter alia, that the finding of the auditing judge was against the weight of the evidence. The court dismissed the exceptions and confirmed the adjudication. Subsequently the widow filed a bill

[Hamill's Appeal.]

for a rehearing, on the ground of after-discovered evidence. This evidence was that of Thomas Blackburn and was in substance :

" Decedent always led me to believe that it was his wife's money in the business, from first to last. I cannot remember now the exact words of our conversations on his business, but those conversations were in effect that it was his wife's business, and her money was carrying it on and increasing it.

" The conversation I had with decedent in the year 1870, was in effect the same as at the time of his marriage, when he said he had nothing much to put in the business ; that his wife had her money in it, and carried it on with her money.

" I often had conversations with him, up to a few months of his death, and he never said anything to contradict the foregoing. He left the positive belief in my mind, from what he said, that his wife was carrying on the business with her money."

The court dismissed the bill and confirmed the adjudication absolutely, when Ann Hamill took this appeal.

*W. B. Robins* and *P. McCall*, for appellant.—Money received by a husband from his wife's estate, after the Act of 1848, is presumed to have been received for her use : Johnston *v.* Johnston's Adm'rs, 7 Casey 450 ; Mellinger *v.* Bausman, 9 Wright 522 ; Grabill *v.* Moyer, Id. 530 ; Gicker's Adm'rs *v.* Martin, 14 Id. 141 ; Bergey's Appeal, 10 P. F. Smith 408 ; Sawtelle's Appeal, 3 Norris 306 ; Zeigler's Appeal, 6 Id. 342.

The decision in the present case holds the appellant to as stringent a proof of her claim as was required before the Act of 1848, or in a contest between the creditors of a husband and his wife. It puts the burden of proof upon appellant to show that the money was not received as a gift, and says the presumption is against her. This, according to the cases, is clearly erroneous.

There is enough proof here to show that the husband received the wife's money, and it was placed in the business for her benefit and use, and that the business was carried on in his name on account of her coverture. It would have been unnatural to suppose that the appellant would have *given* this money to a husband with children by a former wife, who were adults, and to whom she owed no duty.

*E. B. Watson* and *Thomas Latimer*, for appellees.—There was no evidence of a loan, or that decedent ever used any of his wife's money. To establish the claim of a wife as a creditor of her husband, the proof thereof must be clear : Hause *v.* Gilger, 2 P. F. Smith 412 ; Wesco's Appeal, Id. 195 ; Parvin *v.* Capewell, 9 Wright 89 ; Rhoads *v.* Gordon, 2 Id. 277.

Appellant claims the burden of proof was shifted on us to prove it was not a gift. We contend there was no evidence of any money

reaching decedent's hands in his lifetime from appellant, offered at the audit before the auditing judge.

The granting of a bill of review is a matter of discretion and not reviewable.

Mr. Justice WOODWARD delivered the opinion of the court, March 3d 1879.

In the testimony produced before the auditing judge some essential facts in support of the appellant's claim on the fund for distribution were definitely made out. When William Hamill was married in July 1862, he had no property of any kind. Immediately after his marriage, he entered, "with the help of his wife," as found by the adjudication, upon a business requiring some capital, which he pursued until he died, and which, beside providing for the support of his family, has produced an estate amounting to about $3000. There was no pretence on the part of the appellees that he had any resources of his own except his wages as a journeyman harness-maker at the rate of fifteen dollars a week. James McSorley testified that a few weeks before the marriage, Hamill asked for a loan of money to buy a wedding-suit, but told him soon afterwards that he would not need it, "as in a short time he expected to have the handling of a sum of money."

On the other hand, it appeared with equal certainty that Mrs. Hamill was in possession of some real estate which she still holds, and of some personal property which was immediately available. In May 1861, she had drawn out a saving-fund balance of $496.05, and just before she was married she sold to Jane Holmes for $500 the business she had been carrying on as a dealer in boys' clothing. These two sums, amounting to $996.05, were the only cash means directly shown to have been in her hands. One witness testified that Hamill told him in July or August 1862, that he had sold gold belonging to his wife, and received a premium of $200. As the gold premium at that time was about twenty per cent., the amount sold could not have been far from $1000. And as the purchase-money for the clothing store was received in bank notes, it might be inferred that Mrs. Hamill had other moneys than those derived from the saving fund and from Mrs. Holmes. In the absence of direct proof, however, this would be an inference which it would be hazardous to draw. But there is no doubt that the premium of $200 should be added to the other funds traceable to Mrs. Hamill's possession. Rents to the amount of $1100 accrued after the marriage from her house in Newton street, but they were received after the business of a pawnbroker had been established in Mr. Hamill's name, and were paid, for six or seven years at least, to Mrs. Hamill herself.

At the audit, a claim was made on behalf of the appellant against her husband's estate for $1500, with interest for fourteen years, and

[Hamill's Appeal.]

for $866.13, with interest for eight years.   The whole claim was resisted on the ground that there was no proof that any money of the wife passed into her husband's hands.   It was rejected on that ground, and the adjudication was confirmed by the Orphans' Court.

All the questions pending between these parties are to be treated in view of the testimony on which the decree for distribution was based.   It is unquestionably within the discretion of the Orphans' Court to grant or refuse a prayer for a review on the ground of after-discovered evidence: Green's Appeal, 9 P. F. Smith 235.   In the exercise of that discretion, the appellant's bill for a review of the decree was dismissed, and the allegations it contained and the affidavit of Thomas Blackburn are necessarily to be disregarded.

In many of the cases in which a wife's right to a recovery against her husband's estate has been in issue, the original ownership of the fund demanded has been the point of the controversy.   There is room for no such question here.   At the time of her marriage, the proof is clear that Mrs. Hamill had nearly $1000 in money, and that soon afterwards she became possessed of at least $200 more.   Did that money go into her husband's hands?   He had no means of his own up to the hour of the marriage.   Mrs. Hamill was not shown to have made any other investment, and it was shown that she entered upon the new enterprise at once.   Mr. McKeon testified that she and her husband went into the pawnbroking business; that they carried it on until his death; that they did a fair business; and that the husband, in the opinion of the witness, had no money.   That the means of Mrs. Hamill established this business would seem to be too clear for doubt.   It has been said, in a multitude of cases, that a wife's right as a creditor of her husband must be clearly proved, and this was said with special emphasis in Hause v. Gilger, 2 P. F. Smith 412.   Here there are adequate elements of clear proof—a penniless husband, a wife with $1200, and the establishment by the joint action of both, in the husband's name, of a business requiring a liberal cash capital at the start.

But the objection has been made on the part of the appellees, that no proof was made of any terms on which Mr. Hamill held the money, and that without some evidence of a loan they were not required to show that it was a gift.   The essential question is whether Mr. Hamill received the money or not.   If he did, it will be presumed that he held it in trust for her.   The mere possession of a wife's money is no evidence, since the Act of 1848 was passed, that the title to it has been vested in the husband: Grabill v. Moyer, 9 Wright 530;  Gicker's Adm'rs v. Martin, 14 Id. 141; Bergey's Appeal, 10 P. F. Smith 408.   No rights of creditors are involved in this litigation, and it is not to be taken for granted that Mrs. Hamill intended a gift to her husband for the eventual benefit of his children by a former wife.

[Hamill's Appeal.]

Interest has been claimed by Mrs. Hamill on the money she advanced. Perhaps the allowance of this claim would be just. But she permitted the use of the money without stipulation as to terms. She was living with her husband in the usual family relation, and she derived her support from the proceeds of the business. In the absence of proof of some agreement, a return of the principal only can be enforced.

> The decree of the Orphans' Court is reversed, and it is now adjudged and decreed that in the distribution of the estate of William Hamill, deceased, the sum of eleven hundred and ninety-six dollars and five cents be allowed and paid to Ann Hamill, the appellant, in full for her claim for moneys advanced to the decedent in his lifetime; and that the costs of this appeal be paid out of the fund for distribution.