## EST. OF BENJAMIN WORMLEY, DECEASED.

APPEAL BY MARGARET WORMLEY FROM THE ORPHANS' COURT
OF PERRY COUNTY.

| 137 | 101 |
| 182 | 550 |
| 137 | 101 |
| 187 | 309 |
| 137 | 101 |
| 40SC | 193 |

Argued May 26, 1890—Decided October 6, 1890.

[To be reported.]

1. The rule of law, applicable in a case where a husband has received money which belonged to his wife, is that the mere fact of such reception makes him her debtor, and no affirmative proof by the wife that he received it as a loan, and not as a gift, is required.

2. The law presumes a loan from such a receipt of money, and therefore, if it be alleged afterwards, whether by the husband's heirs or by his creditors, that the money was received as a gift and not as a loan, the burden is upon those who make such allegation to maintain it by proof.

(a) The only evidence in support of a claim for money borrowed, made in the Orphans' Court by a widow against her husband's estate, consisted of declarations of the husband that he had received her money. One of them was to the effect that she had given him her money, but had taken no note or any thing to show for it.

(b) Other declarations were to the effect that he was going to sell certain property and pay the claims of his wife and other persons whom he named; that, if his wife lived longer than he, she should have her money; that, if he died before her, he would leave her plenty to live on, and wanted her to have the money back:

3. The use of the word "given" by the husband, was not sufficient in the connection in which it was used to show that he regarded the money as a gift; and, taking all his declarations together, they did not so qualify his admission of the receipt of the money as to rebut the legal presumption of an indebtedness to his wife therefor.

4. When a wife has permitted her husband to have the use of her money, without any agreement or claim for the payment of interest upon it, and has herself indirectly shared in the benefit derived from its use by him, she cannot recover interest from his estate except for the period that has elapsed after his death.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 377 January Term 1890, Sup. Ct.; court below, number and term not given.

On April 26, 1889, Margaret Wormley and Jacob Rickard, administrators of the estate of Benjamin Wormley, deceased,

Auditor's Report.

settled their first account in which they took credit for the payment of $967.45, to said Margaret Wormley, who was the decedent's widow, on account of a claim for money loaned by her to the decedent, and interest thereon. Exceptions to this credit having been filed, *Mr. E. R. Sponsler* was appointed auditor to pass thereon. He afterwards reported as follows:

Your auditor finds, as undisputed facts, that on November 17, 1859, Benjamin Wormley married Margaret Metz, who was a daughter of Jacob Metz, then deceased; that upon a settlement of the estate of her father, Mrs. Wormley received about $600, which subsequently went into the hands of her husband, and with this amount, or partially at least, there was builded a house upon the mansion farm of her said husband, in Tyrone township, which was used and occupied by them from the spring of 1860 for some ten or twelve years thereafter; that Benjamin Wormley died on July 7, 1886, leaving certain children by his first wife but none by his present widow, who was his second wife; that by the account of the administrators of his estate, filed on April 26, 1889, Margaret Wormley received, upon the claim presented against her husband's estate, the sum of $967.45 explaining this credit in the following language: " Margaret Wormley, the widow, loaned her husband shortly after their marriage, on the 7th day of November, 1859, the sum of $600, being her patrimony, and which would amount to almost $1,700, but she consents to liquidate her claim at $1,000." To this credit the heirs of Benjamin Wormley except, on the ground that the amount originally represented at $600, was not a loan by the wife to the husband, but a gift, and as such would not be the subject of credit in this account.

Thus it will be observed have the questions been raised: 1. Was the $600 a loan, or a gift, by the wife to the husband? 2. Is she entitled to interest thereon from the time of his receiving it, up until the date of the confirmation of the sale of his real estate, or only after their leaving the mansion farm, up to the last mentioned date?

The law establishing the relation of debtor and creditor, prior to the passage of the act of 1848, as between husband and wife, appears to be abundantly settled, in that the mere reducing of the wife's money into the husband's possession is evidence that the title to the same had passed into him, and no presumption,

### Auditor's Report.

but the absolute proof that he did not receive it as a gift but as a loan, would ever obtain : Tritt v. Colwell, 31 Pa. 232; 2 Kent Com., 135; Siter's Case, 4 R. 468; Timbers v. Katz, 6 W. & S. 290; Woelper's App., 2 Pa. 71; Swoyer's App., 5 Pa. 377; Clevenstine's App., 15 Pa. 499; Nolen's App., 23 Pa. 37. But, since the passage of this act of assembly, the rule is changed, in that, where the husband has received the money of the wife, he holds it in trust for her, and the mere possession of it is no evidence that the title to it is vested in him. The presumption is that it is hers, although in his hands, and the burden is upon those who assert differently : Grabill v. Moyer, 45 Pa. 530; Gicker v. Martin, 50 Pa. 141; Bergey's App., 60 Pa. 408; Bachman v. Killinger, 55 Pa. 414; Hamill's App., 88 Pa. 363.

That Mrs. Wormley received money to the amount of $600 from her father's estate, is one of the undisputed facts found by your auditor. But, after its receipt by her, to whom did this money go, and with what intention was it received? Clearly by the husband, but with what intention? John E. Wagner swears that B. Wormley told him he had gotten the amount of money received from home by his wife. Jno. H. Hohenshildt swears that he told him that she had given him her money, but had taken no note for it or anything to show. J. L. Minich and his wife both swear that in 1882 he told them that he had gotten $600 from his wife and gave her no note for it, and with this amount built the house on the mansion farm. Jacob Rickard swears that he told him that he had his wife's money that she got from home.

Up to this point of time, there is no evidence of his having received this money save by his own declarations, for David Metz, her own brother and the one who paid the money, swears that it was paid to her, but he fails to remember " who put the money in their pockets," save $60 that he paid individually to the husband, and this to pay a bail note. So that, in the absence of any of the declarations made by the husband, it could not be found that he had received it; and your auditor is clearly of opinion that if the testimony of the witnesses had been exhausted, it would have been easy indeed to have decreed the amount claimed to Mrs. Wormley. But, if out of the mouth of the decedent his estate is to be charged, it would

be improper and unjust to cut his declaration in two and use that alone which would seek to charge his estate without accepting the other part itself. In fact, it is an elementary principle of the law that when a declaration is made, as in this instance, the whole speech and not the part must be taken. The same witnesses whose testimony has been quoted as above, qualify their testimony in that; as by Wagner: "I think he always said he intended to leave her the money. He never spoke of it as a gift;" as by Hohenshildt, "if he died before her, he would leave her well fixed;" as by Minich, "she told him to take the money and do with it the best he could. He would leave her plenty to live on if he died before her and wanted her to have it back;" as by Mrs. Minich, "that he was going to leave her plenty to live on. He never told me he was going to pay her back, but always said he wanted her to have it as long as she lived;" and as by Jacob Rickard, "he told me that he was going to sell other property and pay Sol. Briner and E. Freeman and his wife and several others whom he named; he then referred particularly to the claim of his wife, and said if his wife lived longer than him she should have her money."

Are these the character of qualifications that usually accompany a declaration of indebtedness? "That I have received my wife's money and will leave her well provided for if she lives longer than I do." It must here be remembered that the relation of debtor and creditor is sought to be established, and that Mrs Wormley for all purposes within this view might as well be some one else. "You take this money and do with it the best you can," is her language to him as detailed. "I put it into the house on the mansion farm and if I die before her I will leave her well provided for." Did he refer to his wealth? Did he refer to disposing of his estate by will, and in this way pay her back, or did he mean to satisfy her in anywise, he recognizing this as a loan and not a gift? You will remember that it is some three months before his death that the conversation with Jacob Rickard was had, and this at a time when his indebtedness is uppermost in his mind. He expected to pay Briner and Freeman by the sale of his lots in Landisburg, but when he speaks of the money gotten by him from his wife and to which he particularly refers, he says,

Auditor's Report.

"if my wife lives longer than I do she shall have her money." Within three months from this time he dies. Would not his language have been, " I got this money from my wife; I owe it to her, and I want it paid."

After a very exhaustive search of the authorities I find none that come so close in facts to the case at bar, as Bergey's App., 60 Pa. 408. This was an appeal from the Common Pleas of Montgomery county, and the proceedings were the distribution of the balance of the proceeds of the sheriff's sales at the suit of Peter Boorse against Jacob Bergey and Deborah his wife. The claimants of this fund were judgment creditors of Bergey on the one hand, and the wife on the other, she alleging that the real estate was her own separate property and that her husband had no interest in it. The wife there received from her father's and mother's estate, some time after her marriage, a certain sum of money, which was testified to that Deborah and her husband were together when the money was paid; that the husband picked up the money, counted it, and witness did not think that he put it down again. The husband had bought his father's farm, and he told witness that he would put the money in there. The court below rested their conclusion upon the grounds that the money was not secured for eight or nine years after the husband received it, and then by judgment note executed October, 1858; and that, inasmuch as she had quietly assented to the use to be made of it, it was a gift and not a loan. The Supreme Court, however, in overruling the court below, as in Johnston v. Johnston, 31 Pa. 450, say that it made no difference whether the declaration of indebtedness was made at the time or afterwards, as it was evidence against the estate of the husband of the intent with which it had been received, but in this case, the very best evidence of the existence of an indebtedness was made manifest by the judgment note executed by him to her in October, 1858.

It will be readily observed the difference between the case just cited and the one at bar. In the one, there is an acknowledgment of the receipt of the money, with a promise to provide for her if she survived him, and if this language could be construed into a contract to pay, it would lack that greatest of all elements, consideration. In the other, there is a tacit understanding between the husband and the wife, made so, even by

the law itself : "For you are her trustee, if not her donee," and this was made manifest by the note executed.

In light of the argument as here made, it is not considered necessary to discuss the question of interest.

Benjamin Wormley received this money, in the opinion of your auditor, as a gift from his wife, but with the belief, as manifested by the testimony, that for her goodness he would leave her well provided for after his death, and he so finds. Therefore, your auditor finding this to be a gift and not a loan, it is not the subject of credit in the account, and he therefore surcharges the administrators of the estate of Benjamin Wormley, deceased, with the sum of $967.45, as taken credit for in the account filed.

Exceptions to the report of the auditor, after argument, were overruled by the court, BARNETT, P. J., in an opinion in part as follows :

The money having come into the hands of Benjamin Wormley, whether from the administrator of his father-in-law, or from his wife, the presumption is that he received it as trustee for, or as the debtor of, his wife. But this is a rebuttable presumption, and will yield to facts and circumstances inconsistent therewith. It will be observed that the money was received about the year 1860 ; and from that time until after the death of Benjamin Wormley, a period of about twenty-six years, no demand appears to have been made for the money, or for a note, or any security or evidence of a debt. The declarations of Mr. Wormley are rather the expressions of gratitude and an intention to recompense in some way for favors bestowed, than an acknowledgment of indebtedness, which he was bound to pay and discharge. We think that the fact of the husband being permitted to use this money as his own for a period of twenty-six years, without having given any evidence of the creation of a debt, and without any evidence of claim or demand by the wife, is inconsistent with the presumption that a debt was intended between the parties, and, therefore, that the auditor did not err in his conclusion. And now, therefore, November 18, 1889, the exceptions to the auditor's report are overruled and his report is hereby confirmed.

—Thereupon Margaret Wormley took this appeal, specifying that the court erred :

### Arguments.

1. In overruling the exceptions to the auditor's report.
2. In confirming the report of the auditor.

*Mr. W. N. Seibert*, for the appellant:

1. A husband, receiving his wife's patrimony, takes it primarily as her trustee or debtor, and continues to be such, unless it is shown affirmatively that she assented to his taking it as a gift; the law secures the title to her, and her acts or declarations alone can divest that title. Manifestly, the auditor has not a clear perception of the change wrought by the act of April 11, 1848, P. L. 536, as to the effect of a wife's money going into the possession of her husband. And the assumption by the court below, that the husband was "permitted to use this money as his own," is unwarranted by anything in the case. It was unnecessary that she should take any evidence of the creation of a debt: Towers v. Hagner, 3 Wh. 54; Johnston v. Johnston, 31 Pa. 451; Hamill's App., 88 Pa. 367.

2. Nor was it necessary that she should show the making of a claim or demand upon her husband for the money. Such claim or demand could be proved only if made in the presence of strangers, and that line of conduct would disturb the domestic tranquility which the law is so careful to protect. The declarations of the husband, in evidence in this case, show his receipt of the money. They contain no express statement that it was received as a gift, and, on the contrary, they are a recognition of his indebtedness to his wife for it. Therefore, the widow is entitled to recover the money, as there must be express evidence of her intention to give the money to her husband, in order to bar her right to it: Trimble v. Reis, 37 Pa. 448; Messner v. Messner, 1 Pears. 222; Bergey's App., 60 Pa. 416; Grabill v. Moyer, 45 Pa. 534.

3. This is not a contest between the widow and creditors. Even in such contests the rigid rule of proof imposed upon the wife in Gamber v. Gamber, 18 Pa. 363, has been modified: Bergey's App., 60 Pa. 408. But when the rights of creditors are not involved, that rule does not apply at all: Sawtelle's App., 84 Pa. 306; Young's Est., 65 Pa. 101. The lapse of time between the receipt of the money and the husband's death, is unimportant. It cannot be known how often she requested of him some evidence of her claim. The mutual confidence of

Opinion of the Court.

the marital relation rebuts any presumption of a gift: Moyer's App., 77 Pa. 482; Ziegler's App., 84 Pa. 342. If, under Towers v. Hagner, 3 Wh. 48; Bardsley's Est., 13 Phila. 222; Mellinger v. Bausman, 45 Pa. 529; Grabill v. Moyer, 45 Pa. 530; and May v. May, 62 Pa. 206, it should be adjudged that Mrs. Wormley is not entitled to recover interest on the $540 that went into the house, she should be allowed interest on the remaining $60, used in paying a debt, from its receipt, and on her entire claim from her husband's death.

*Mr. W. A. Sponsler* (with him *Mr. William Orr*), for the appellees:

The first legal proposition advanced by the defendant is partly correct; but, in this case, there is no evidence that Benjamin Wormley received his wife's money except his own declarations, and they show that he got it, not as her trustee or debtor, but as a gift, "to do with it as he pleased." Whether a husband, receiving his wife's money in her presence and with her concurrence, takes it as a trustee or debtor, or as a gift, depends upon the agreement of the husband and wife at the time, and the court below was right in finding that there was no intention to establish the relation of debtor and creditor, or of trustee and cestui que trust, but that the money was received as a gift.

OPINION, MR. JUSTICE GREEN:

It was an entirely undisputed fact, and so found by the learned auditor in the court below, that the appellant received from her father's estate about $600 in the year 1860, or thereabouts, which went into the hands of her husband, and was kept by him. All the evidence in the case established this fact, and there was not a particle of contradictory proof. The rule of law, applicable in such case, is that the mere fact of the reception of the wife's money by her husband, makes him her debtor, and it requires no affirmative proof by the wife that he received it as a loan, and not as a gift. On the contrary, if it is alleged afterwards, whether by the husband's heirs or by his creditors, that the money was received as a gift, and not as a loan, the burden is upon those who make such allegation to prove it.

Opinion of the Court.

Thus, in Grabill v. Moyer, 45 Pa. 530, we said: "After it has been shown, as it was in this case, that the property accrued to the wife by descent from her father's and brother's estates, the presumption necessarily is that it continued hers. In such a case, it lies upon one who asserts it to be the property of the husband, to prove a transmission of the title, either by gift or contract, for value; for the law does not transmit it without the act of the parties. If mere possession were sufficient evidence of a gift, the act of 1848 would be useless to the wife. Nothing is more easy than for the husband to obtain possession even against the consent of the wife; and where he obtained it with her consent, it can be at most but slight evidence of a gift. . . . . When it is established that the ownership of the money is in her, she may take the position of a creditor, with all of a creditor's rights." In Bergey's App., 60 Pa. 408, THOMPSON, C. J., said: "No inference of a gift from the transaction as detailed, could, we think, arise. She was not bound to attempt a rescue of it from him, or proclaim that it was not a gift. She might rest on the idea that his receipt in her presence was with the intent to take care of it for her. In Johnston v. Johnston, 31 Pa. 450, this court said, in a case of the nature of this: 'As the law made it (the money) hers, it presumes it to have been received for her by her husband.' That case contrasts the presumptions arising from the receipt of money by husbands prior and subsequent to the act of April 11, 1848. In the first period, the presumption is that he has received it under and by virtue of his marital power as his own; in the second, the presumption is the opposite, that he received it for his wife, the act of assembly having declared it hers, and for her sole and separate use."

In Hamill's App., 88 Pa. 363, this court said: "But the objection has been made on the part of the appellees that no proof was made of any terms on which Mr. Hamill held the money, and that without some evidence of a loan, they were not required to show that it was a gift. The essential question is, whether Mr. Hamill received the money or not. If he did, it will be presumed that he held it in trust for her. The mere possession of a wife's money is no evidence, since the act of 1848 was passed, 'that the title to it was vested in the husband." In Young's Estate, 65 Pa. 101, we said: "The hus-

band is presumed to know the law and his duty, and, if he does not restore to her all that is hers, it must be presumed he intends what the law requires of him, that he will stand as her debtor for the amount received, and that his estate will so answer. He has in law no more title to her separate estate, or to the use and conversion of it to his own benefit, since 1848, than he has to the property and estate of any stranger without her actual consent. When he receives her money, the legal presumption is that he receives it solely for her use, and consequently must account for it by showing that it was returned or expended for her use at her request, or that he received it as a gift from his wife."

We have selected these cases from a number of the decisions upon this subject, because they are representative in their character, and afford ample illustrations of the kind of treatment which the facts of the present case require. The auditor and court below seemed to think that the evidence was scarcely sufficient to make out a case of indebtedness by the husband to the wife, and therefore inclined to the belief that it ought to be regarded as a gift; and this result was reached, not because there was any specific evidence of a gift, but rather as an alternative of insufficient evidence of a loan. But the reasoning of all the cases, cited above, is that the law presumes a loan from the mere fact of the receipt of the wife's money by the husband, and that it is his legal duty to return it to her, and that this presumption can only be rebutted by proof of a gift, if a gift is alleged.

Having read all the testimony carefully, we fail to discover any evidence of a gift by the wife. The auditor thought the declarations of the husband which proved the receipt of the money by him were not indicative of a loan, and they must therefore be treated as evidence of a gift. But we cannot read those declarations in that way. In none of them did he assert that the money was received by him as a gift, in the proper sense of that term. He spoke of not having given her any note or obligation for it, but quite plainly indicated, as we think, that he intended she should have it back. Thus, the first witness said, " I think he always said that he intended to leave her the money, as near as I can tell. Never heard B. Wormley say that this was a gift by her to him." The next

witness said, "He told me that she had given him her money, but had taken no note or anything to show for it; if he died before her, he would leave her well fixed." That the husband did not mean to use the word "given," in the sense of an absolute gift, is manifest from his remark that she did not take any note or anything to show for it, because, if he had understood it to be a gift, in the proper meaning of the word, there would have been no occasion for the remark about her not taking a note, or any other security. The next witness, having repeated a similar declaration about her giving him the $600, said, "The way he talked to me was he would leave her plenty to live on if he died before her, and wanted her to have it back." This language indicated that he did not regard the money as absolutely his, but as something which he desired her to have back. The next witness said that he told her that his wife laid down the money, and told him to do whatever he pleased with it; that he had put the money in the house on the Mansion farm; that he wanted her to have it as long as she lives; and that he gave her nothing to show for it; all of which tends to prove that he considered he was holding the money for her, and that at some time it was to be returned to her. The witness added, "He did not say it was an out and out gift to him, but I think he counted that she was to have it. I heard him say at other times that he had his wife's money, and that he was going to leave her plenty to live on. . . . . I think it was the intention of B. Wormley to pay it back." The next witness testified that Wormley told him "he had his wife's money that she had from home, and he was going to sell the lot across the hill, and the property in Landisburg, and expected to pay those claims; Mr. Briner's, Mr. Freeman's, his wife's, and several others whom he named. . . . . He then referred particularly to the claim of his wife; said, if his wife lived longer than him, she should have her money; this is the only time he ever referred to this matter to me. He then died within three months from this time, intestate." If this testimony is believed, and there is no reason to disbelieve it, it is conclusive of this question. It not only proves a distinct recognition of his wife's claim, but the expression of a determination to pay it, in his lifetime if possible, and after his death if not. The particular value of all the testimony, referred to,

is that it rebuts any inference that the husband regarded his wife's money as his, and hence destroys the theory of a gift. The declarations of the husband were the only source from which the auditor drew his inference of a gift, and we are clearly of opinion those declarations do not justify that inference. There is not a particle of testimony to prove that the wife was present when these declarations were made, or that she ever in any instance said or admitted by word or action that she had made a gift of the money to her husband. In these circumstances, we think without hesitancy, that the legal presumption of indebtedness from the mere recipiency of the money remains, and must control the question.

We do not think the wife can claim interest on the money, as she undoubtedly did permit her husband to have the use of it without any claim for interest, and indirectly, at least, shared in the benefit derived from its use. She is of course entitled to interest from the time of his death, and that must be allowed.

> The decree of the court below is reversed, at the cost of the appellees; and the record is remitted, with instructions to correct the account in accordance with this opinion.

