MATTHEW CLARKSON JUNIOR and others,

v.

FREDERIC DE PEYSTER.

A guardian acting in good faith, but chargeable with some degree of negligence; omitting to invest the moneys of his wards, and mixing those moneys with his own; but not appearing to have employed the funds in trade or productive business; is charged with simple interest on the funds in his hands, uninvested.

This is the most general rule.

When profits are earned by the guardian from the trust fund, they belong to the ward: and in this case, an inquiry was directed, to ascertain whether the guardian had made profits.

Compound interest is allowed, only in cases of gross delinquency.

The idea of an equitable rate of interest less than the rate established by law, has never been adopted in this state

In this suit against the guardian, he was not compelled to produce before the master, his books of account containing entries of his private concerns.

*1825.*
*June.*

*Guardian.*
*Interest.*
*Compound*
*interest.*
*Production*
*of books.*

THE following opinion of the chancellor in this cause, regards, principally, the question of interest chargeable against a guardian. The preliminary proceedings are sufficiently explained in the opinion itself: and the nature of the question is such, as seemed to make it unnecessary, to insert the arguments of counsel.

*17th September.*

THE CHANCELLOR. This cause was heard upon the pleadings and proofs, in November 1823. It being necessary, that the cause should be referred to a master, to ascertain the amount with which the defendant should be charged, as the guardian of the complainants; the principles upon which an account should be taken, were then discussed and determined.

The complainants contended, that the defendant should be charged with compound interest on the moneys which he had received, as their guardian.

The pleadings and proofs appeared to me to exhibit the administration of this guardian, as a case of negligence in some particulars, but as a case wholly free from fraud, and of good faith on his part, in all respects.

The defendant in his answer states, that since the death of Freeman Clarkson, he has not made any investment of the moneys of his wards for reasons which he gives; and that he has had the use of the moneys remaining in his hands, for

which he intended to make a reasonable allowance of interest; it being necessary however, to keep large sums ready to meet the current expenses of the infants : that since the year 1811, he has been but very partially concerned in trade ; and he does not believe or admit, that the moneys from the use he made of them, were employed in trade ; but that he made no specific appropriation of them, different from the use of his moneys generally: and he denies, that the same were ever to his belief, in any jeopardy, or that he has derived a benefit from speculations therewith. This statement of the answer is not disproved ; and it must be taken in connexion with the other facts, as the truth of the case. The substance of the answer in this respect, is, that the defendant did not invest the trust moneys, so as to make them produce interest ; that he did not employ them in commerce ; but that he mingled them with his own moneys, and in that way, had the use of the moneys of his wards.

The defendant also states, that shortly after the principal part of the moneys came to his hands, the war between this country and Great Britain took place, that during the war, stocks of all kinds were much depressed and were deemed precarious ; that investments on bond and mortgage, were generally, attended with difficulty : and that at the termination of the war and afterwards, the growing exigencies of his wards required large advances and expenditures.

Every gain made by a trustee from the trust fund, belongs to him for whom the fund is held in trust. This ancient and universal principle of equity, seems in the earlier periods of English jurisprudence, to have been the only rule, by which executors, administrators and guardians were charged with any thing beyond the capital of the trust fund. Other rules not impairing this great principle, but subordinate to it, have been introduced, in more recent times : and it has been held, that where these trustees have omitted to invest a fund which they might and ought to have made productive, they shall be charged with simple interest. The allowance of compound interest against these trustees in any case, is a doctrine still more modern. Compound interest has been allowed in some cases, upon peculiar facts. They have been in general, cases

of gross delinquency ; as where an executor had violated the express directions of a will. The English case in which the application of compound interest to these trusts, is most discussed, is that of Raphael against Boehm, 11 Ves. 92.

When compound interest has been allowed in England, it has usually been charged at five per centum, the legal rate of that country ; but in many cases, the interest upon interest has been computed at four per centum, under the name of equitable interest, and as a mitigation of the legal rate. This idea of an equitable rate of interest, less than the rate established by law, has never been adopted in this state. Our legal rate of interest is seven per centum a year : and interest by this rate, converted into principal, gives results far exceeding any compound interest, which has ever been allowed in England.

Few persons however vigilant and active they may be, are able in this state, to invest money without hazard, and obtain from it accumulations equal to the results of compound interest at seven per centum a year. He whose funds are held in trust, insists with reason, that they shall never be put in hazard ; and he can never justly claim as interest, greater interest than he could have received, had he himself made secure investments. To charge a trustee with interest upon interest at seven per centum, must in general, be, to charge him with much more than he actually received or could have received, from any safe investment ; and would be, to require from him, when acting for others, what he can not do, when he acts for himself. Such a sentence, can never be just, otherwise than as a punishment for fraud or very culpable misconduct.

It is required by sound policy, that these trusts should not become lucrative to the trustee ; and this policy is enforced by the rule of equity, that all their gains belong to those for whom they act. Policy also requires, that these trusts should be accepted and discharged ; but they would seldom be accepted, if they were held to impose a responsibility, which could not be discharged by ordinary diligence and fidelity. As the trustee ought not to gain, he should not lose, by his trust and his services for others. A jealous severity which

would deter prudent men from accepting these trusts, and a lax indulgence which would invite men to accept them for gain, are extremes, which are equally inexpedient.

The medium which shall deprive the trustee of gain without subjecting him to loss, and shall do justice to both parties, is a point which can not be attained with exactness, by any computation of interest ; but in all ordinary cases, simple interest at seven per centum, will sufficiently reach that point : and if simple interest does not always attain the justice of these cases, compound interest at seven per centum, will in general, immoderately exceed the desired point of equal justice.

A guardian is bound to fidelity and ordinary diligence in the administration of the funds of his ward : but as the want of fidelity or diligence, is infinitely varied by the circumstances of different cases, no uniform rule of damages or redress has been established. The most general rule, is that which charges the guardian with ordinary interest. When profits are earned from the trust fund, they belong to the ward. Compound interest has been allowed in a few cases of gross delinquency ; but such interest when computed at a high rate, becomes oppressive and unjust.

In the case of Fox against Willcocks, 1 Binney 194, the opinion of the supreme court of Pennsylvania was expressed by chief justice Tilghman, in the following terms. " To " lay down rules, by which it may be ascertained in every " case, whether administrators shall pay interest on balances " in their hands, is impossible ; because every case depends " on its own circumstances. But I think it may be establish- " ed as a principle, that interest is payable, where the admin- " istrator has been guilty of neglect in not putting out money, " or where he has made use of it himself. Both the act of " assembly and the principles of universal reason concur in " this ; and it is agreeable to the authorities cited from the " law of England and the civil law. Still, it remains to be " decided by the facts in each case, whether the principle is " applicable." When a trustee has employed the funds of his trust in commerce, or in any business by which profits have been made, the profits and their amount must be ascer-

tained, as facts are ascertained in other cases. It may be sometimes, difficult to show the profits really made by a trustee, from the employment of the trust fund; but all the means which are authorised by justice for the investigation of truth, may be employed for this object. The trustee is compelled in equity, to answer concerning the employment of the fund, and the profits which he has earned. With his disclosures and a proper investigation of facts, the profits earned may be ascertained, or at least, may be attained more nearly, than they can be shown by the results of interest upon interest.

The moneys of the wards in this case, were not employed in trade, or used by the defendant, otherwise than he used his own moneys. The defendant was therefore, unable to disclose by his answer, any actual profits derived from the trust moneys; and his omission to give any statement of such profits, can not be regarded as a suppression of truth. So much of the moneys as was not wanted for the current uses of these wards, might have been invested; and he made no investment; but for this omission, he gives reasons which have weight. In the general course of his administration, he was attentive to his trust; he acted throughout, with good faith; and if he in all the circumstances of this case, can be charged with interest upon interest, few guardians can escape the same penalty.

Upon all the facts, as they appear from the pleadings and proofs, I was of opinion, that the question whether the defendant has made profits from the moneys of his wards, should be made a distinct subject of investigation, before the master; and that the defendant should be charged with simple interest upon the moneys remaining in his hands, from which no profits or profits less than simple interest, should appear to have been made.

In January 1824, a motion was made, to compel the defendant to produce his books of accounts, before the master. It appeared, that the books for which this application was made, were books of account containing entries of the private concerns of the defendant. For this reason, and because the complainants were at liberty to examine the de-

fendant before the master, upon the subjects of the reference, the application was denied.

The cause was heard in June 1825, upon exceptions of the complainant to the master's report. In respect to the sum of two hundred dollars due from William Livingston for rent, which the master had disallowed as a charge against the defendant, I was of opinion, that it was sufficiently proved by the testimony of Mary Livingston, that this sum might have been received by the defendant, if he had used due diligence. This sum was therefore, allowed, as a charge against the defendant. In all other respects, it appeared to me, that the master had properly executed the order of reference.