[No. 8875. Department Two. January 4, 1911.]

MRS. J. W. FEIGHAN et al., Respondents, v. R. J. REEVES et al., Appellants.[1]

ACCOUNTING—TRUSTS—INTEREST. Upon an accounting of a trust running over many years, the trustee should not be charged interest on sums received which were by him applied to the payment of interest-bearing obligations, he having reaped no personal benefit from the trust funds, and the owners of the funds not having sustained the loss of their use; but he is liable for interest on sums received and not accounted for by him.

TRUSTS—TRUSTEE'S COMPENSATION. Upon an accounting of a trust, the trustee being a selling agent of real property, it is proper to allow him compensation only up to the time when he turned over the selling agency to real estate brokers.

ACCOUNTING—PARTIES ENTITLED—TRUSTS. Upon an accounting by a trustee, the trustee is not entitled to an accounting by a predeces-

[1]Reported in 112 Pac. 627.

30—61 WASH.

sor, there having been no privity of contract or relationship between them, and the first trustee having been in charge when there was no profit in the property, and the interests of the second trustee being confined to a share in net profits.

Appeal from a judgment of the superior court for Spokane county, Canfield, J., entered December 23, 1909, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for an accounting. Modified.

*Danson & Williams* and *H. J. Hibschman,* for appellants.

*Happy, Winfree & Hindman,* for respondents Feighan.

*James Z. Moore* and *Caleb Jones,* for respondents Moore.

CHADWICK, J.—This suit involves an accounting, the transactions running over a period of approximately twenty-one years. In 1887, J. W. Feighan, James Z. Moore, Aaron Chandler, and J. A. Loomis became the owners in equal right of a Northern Pacific land contract, covering certain lands which they thereafter platted as an addition to the city of Spokane. The sale of the property was put into the hands of Moore as trustee for his co-owners, and he contracted a part of the property and received some payments therefor. In 1892, appellant R. J. Reeves was made attorney in fact for the several owners, and thereafter became the owner in his own right of an undivided one-half of the Loomis interest. Reeves sold lots, received payments therefor, and probably pledged his own personal credit to some extent; and, so far as the record shows, honestly, but after the custom of men, somewhat carelessly, executed his trust. No accounting was ever had between the parties.

The specific finding of the trial judge was: "The defendant R. J. Reeves never at any time rendered an account of his trust, nor was an accounting demanded of him, until the commencement of this action in October, 1907." The greater part of the unsold part of the plat was thereafter lost to the owners through a foreclosure proceeding. The affairs of the

syndicate being somewhat involved, on March 3, 1896, Reeves, for reasons which seemed to him to be for the best interests of all concerned, and in good faith, conveyed all the unsold property to his wife Nina Reeves. This deed was made without consideration, and was held by the trial judge to be absolutely void. The testimony shows, however, and the court found, that the principals were notified of the making of this deed, and the reasons which impelled its execution, and that Reeves thereafter continued in the execution of his trust with the consent of his principals. J. W. Feighan died in 1898, and his widow and heirs brought this suit for an accounting. Chandler disclaimed all interest in the controversy. The heirs of Loomis, who is also deceased, were not made parties; and James Z. Moore, answering, joins in the plaintiffs' prayer for an accounting. Appellant Reeves answering, sets up what purports to be an accounting, asks an affirmative judgment for several thousand dollars, and further demands an accounting on the part of defendant Moore. Further detail of the facts, other than reference to certain figures which we shall presently make, would serve no useful purpose, as this litigation can be of no interest to any one other than the parties immediately concerned. It involves no debatable propositions of law. A valuable memorandum of opinion of the trial judge is made a part of the transcript. A very earnest and persevering effort has been made by him to approximate the true account existing between the parties, and so far as it is possible to arrive at the truth, we think he has done so. The court found that Reeves was entitled to credits as follows:

Cash expended for the benefit of the estate...... $8,778.28
Compensation, seventy-two and one-half months,
    at $20................................. 1,450.00
Commissions paid McCrea & Merryweather...... 747.50
Traveling and hotel expenses................ 521.15
                                           _____
                                           $11,496.93

And that he should be charged for property sold
    by him...............................$10,908.00
To which the trial judge added an arbitrary inter-
    est charge on all sums received from the date of
    the receipt up to the commencement of this ac-
    tion, a total of...........................  1,675.15
                                               $12,583.15

Leaving a balance due from Reeves to the syndicate of
$1,086.22. Of this sum he decreed one-fourth to plaintiffs
and one-fourth to Moore.

The court denied Reeves all credits on account of interest.
We understand the rule to be that, in matters of accounting,
the allowance of interest is largely a matter of discretion
with the trial judge. Now, in this case, while appellant
claims to have made some advances out of his own funds, no
vouchers were produced to show that he did so, nor was it
shown to the satisfaction of the court that the items of indebt-
edness incurred on behalf of the syndicate were not finally
paid out of the syndicate funds. But we think, in the ab-
sence of any showing of wilful disobedience by defendant
Reeves, or that he reaped any personal benefit from the trust
funds, but with a showing, on the contrary, that he seems
to have devoted them to the payment of the obligations of the
syndicate, that he should not be penalized by taxing the
interest on all sums received from the date of their receipt up
to the time this action was commenced. The theory upon
which interest is allowed is to compensate the owners of the
funds for the loss of their use, but they have not been so lost
in this case. They were, so far as we are able to see, applied
to the payment of interest-bearing obligations, and in equity
were accounted for when paid out for the benefit of the
*cestuis que trust*. As viewed generally, the owners of the fund
have lost nothing, but rather gained, by the payment of their
obligations, aggregating $8,778.28. However, there is testi-
mony tending to show that Reeves takes account only of the

stated purchase price upon payments made to him, disregarding the accrued interest on contracts. In justice to him, it is proper to say that he has endeavored to cover these items by charging himself with interest at six per cent on all sums received, and taking credit for like interest on all sums paid out. This premise is false, but he is, notwithstanding, chargeable with the interest collected on contracts and unaccounted for. This must be fixed arbitrarily, and we think if he is charged enough to balance the total credits allowed him, substantial justice will be done. The account will then stand:

Dr.   For property sold.....................$10,908.00
      Arbitrary charge for interest............  ·  588.93
      _____
Cr.   As itemized above.....................$11,496.93

The court allowed appellant compensation at the rate of $20 per month from the time he took over the business of the syndicate up to the time of the death of Col. Feighan, upon the theory that his agency was terminated by that event. While we cannot agree with the theory of the trial judge in this instance, for there are facts which take the case out of that rule, we can nevertheless approve his finding upon the theory that, a short time before the death of Col. Feighan, appellant had turned over the selling agency (he was no more than a selling agent) to McCrea & Merryweather, a real estate firm in Spokane, who took entire charge of the property, sold lots, collected the purchase price, and paid the taxes. For this appellant was allowed the commissions charged by McCrea & Merryweather, and to allow remuneration beyond that would make a double compensation, which was not within the contemplation of the parties and would not be tolerable in law.

In one respect, however, the decree of the court does not follow the findings. After fixing the title to certain property in plaintiffs, the court found that Reeves and the heirs of Loomis were each the owners of an undivided one-sixth of the unsold residue of the property. No account is taken of this

finding in the conclusions of law or the decree. A supplemental decree may be entered upon the remand of this case, declaring the appellants to be the owners in their own right of an undivided one-sixth interest in and to the unsold lots in West Grove addition as described in paragraph 2 of the decree heretofore entered.

It is strongly insisted that the court should have required an accounting from defendant Moore. Reeves' interest in the property was acquired long after Moore had surrendered his trusteeship. The court found that there was no privity of contract or relationship between Reeves and Moore, and that there was no profit in the property prior to the year 1892. Up to that time Reeves' only interest was one-half of the net profits of the Loomis interest.

We have gone carefully over the pleadings and testimony in this case. It is likely that the findings of the trial judge have not established the exact truth between the parties. The truth can only be approximated where, as in this case, the transactions run over a period of more than twenty years and through a time when the property was practically valueless, and those most concerned took but little if any interest in it. If the one party was careless in accounting, the others were slothful in demanding an accounting. There is no evidence of an attempt on the part of any one of the parties concerned to take a dishonest advantage of any other. That appellant thought the balance, if ever struck, would be in his favor, we may well believe, and that respondents for a long time were willing to abandon their interest, we may well surmise. So that, barring the penalty put upon appellant Reeves, which is a conclusion of law rather than of fact, we approve and confirm in all things the calculations and findings of the trial judge.

Remanded for modification of the decree as hereinbefore indicated.

RUDKIN, C. J., DUNBAR, CROW, and MORRIS, JJ., concur.