[OCTOBER TERM, 1927]

## REED, ET AL. v. TALIAFERRO*
(No. 1362; October 4, 1927; 259 Pac. 815)

EXECUTORS AND ADMINISTRATORS—DEDUCTION OF FEES—ALLOWANCE OF ATTORNEYS FEES—TRUSTS—INTEREST CHARGEABLE FOR PERSONAL USE OF FUNDS.

1. In an administrator's final accounting, the deduction of his own fees before striking the balance upon which he was to be charged interest *held* proper, in view of Comp. St. 1920, § 6853.

2. In a proceeding relative to an administrator's settlement of an estate and his final accounting therefor, the finding of the trial court that certain attorneys' fees which had been paid by the executor were necessary could not be disturbed on appeal.

3. A charge in the final account of an executor for attorneys' fees which he had paid *held* a proper charge against the estate and therefore allowable as deductions, in view of

Comp. St. 1920, §§ 6853, 6854, where such fees were not in excess of amount permitted the executor by law as his own fee, although they were in excess of the fee which the executor actually charged the estate.

4. An executor who is acting as trustee of certain funds of the estate is not entitled to so use or invest such money as to make profit thereon.

5. Where executor as trustee under a will used the trust fund in his own sheep business and upon final accounting was in good faith unable to show his earnings from the use of such money, *held* that he should be charged the legal rate of simple interest, which was 8 per cent. prior to passage of Comp. St. 1920, § 4133, as amended by Laws 1923, c. 34, § 4, and 7 per cent. thereafter.

6. Whether a trustee should be charged compound interest where he uses the trust funds for his own purposes depends somewhat on the particular circumstances of the case in question.

*See Headnotes: (1) 24 C. J. p. 87 n. 1; p. 972 n. 37; (2, 3) 24 C. J. p. 972 n. 36; p. 1050 n. 13; (4) 24 C. J. p. 77 n. 94; p. 78 n. 7; 28 C. J. p. 1148 n. 17; 39 Cyc. p. 409 n. 24; (5) 39 Cyc. p. 426 n. 22; (6) 24 C. J. p. 87 n. 10; p. 88 n. 11; p. 506 n. 41; 39 Cyc. p. 429 n. 44; p. 430 n. 50.

APPEAL from District Court, Sweetwater County; WILLIAM A. RINER, Judge.

Action by Gail Reed and another against T. S. Taliaferro, Jr. From the judgment, plaintiffs appeal.

*Arnold & Arnold,* of Laramie, for appellants.

The executor acting as trustee was obligated under the will, to account for the interest accruing on the funds at the rate fixed by statute, 4131-4133 C. S. It should have been paid annually to the beneficiaries under the will. The statute relating to public deposits (2955 C. S.) is not applicable. Section 7049 C. S. did not exist when this trust was created, and of course, does not apply; the beneficiaries were entitled to compound interest on the interest past due. In Re Piercy's Estate (Calif.) 145 Pac. 91, and cases cited; in re Myers, 131 N. Y. 409. If an adminis-

trator mingles funds of an estate with his own, or employs them in his own business, he may be chargeable with interest thereon at the highest legal rate compounded. Woerner Am. L. Ad. (3rd Ed.) p. 1765, and cases cited; Michoud v. Girod, 4 How. (U. S.) 503, 556. The note given for the funds borrowed, and providing for interest at two per cent. per annum, is a mere nullity. St. Paul Trust Co. v. Kittson, 65 N. E. (Minn.) 74; in re Myers' Estate 30 N. E. 135, 137; in re Roach's Estate (Ore.) 82 Pac. 118. Executors must account, and their responsibility only terminates after compliance with the statutes; In re Higgins Estate (Mont.) 39 Pac. 517. Executor's commissions are to be allowed by the Court, 6853 C. S., after accounting and settlement, but are not deductible by the executor before settlement. In re Straus Estate, 77 Pac. 1122, 22 Pac. 86; in re Sullivan Estate (Wash.) 78 Pac. 945; in re Hite's Estate, 101 Pac. (Cal.) 448. The executor dispersed Four Hundred Dollars to other attorneys during his administration, without authority. Ross Pro. Law p. 765; Noble v. Whitten, 80 Pac. 451; Kuhn's Appeal, 4 Wash. 534; Needham v. Needham, 20 Pac. 345; in re Davis Estate 88 Pac. 957. The statute limits the amount allowable for attorney fees (6854 C. S.) The executor failed to fully account for book accounts inventoried at $3656.55; uncollectable accounts should be reported. Woerner (3rd Ed.) 1741. The trial court followed an erroneous theory of law in its decision in requiring appellants to prove that the account was not right instead of requiring the executor to substantiate his account. Rice v. Tilton, 14 Wyo. 101; in re Sanderson's Estate, 15 Pac. (Calif.) 753; in re More's Estate, 54 Pac. 148; in re Hite's Estate, 101 Pac. 448; in re Roach's Estate, 92 Pac. 118; in re Byrne's Estate, 54 Pac. 957. Conversations between a guardian and probate judge are admissable to show guardian's good faith and knowledge of the judge of the nature of the proceeding. Nagle v. Robbins, 9 Wyo. 211.

*Mahlon E. Wilson* and *Albert R. Barnes,* for respondent.

The record shows that the testator was under contract with a company in Idaho for the purchase of land and water rights, and that the employment of counsel to adjust or dispose of said interest, was in the interests of said estate; the court below found that the book accounts were uncollectable except as to $23; the trial court allowed the statutory executor's commission on money reported as received; the executor charged himself with compound interest voluntarily—he was not chargeable with compound interest under the law. In re Ricker, 14 Mont. 153, 29 L. R. A. 622; in re Ward's Estate, 73 Mich. 220; 24 C. J. 506; Stimson v. Rountree (Ind.) 99 N. E. 439. The $4,000.00 note executed by T. S. Taliaferro, Jr. and W. B. Dunton to T. S. Taliaferro, Jr., as executor, is not a demand note; the trial court did not treat it as a loan; the will authorized the executor to invest the funds in such manner as he saw fit; the executor was charged with a reasonable degree of care and given a large discretion in making investments. There is no hard and fast rule as to the rate of interest chargeable to trustees. In re Seward (Nebr.) 37 A. L. R. 441-448; re Babcock's Estate, 9 N. Y. Supp. 554; re Griffing, 80 N. Y. Supp. 659; in re Klunck, 68 N. Y. Supp. 629; in re Wiley, 91 N. Y. Supp. 661. The trial court charged the executor with approximately $1650.00, which he never received in any way, out of the funds of the estate. The executor took no appeal. The judgment below should be affirmed.

*Per Curiam:*

R. Harvey Reed died on January 30, 1907, a resident of Sweetwater County, leaving a last will and testament, in which he appointed his sons Gail Reed, then about twenty-three years of age, and Penrose Reed, then about twenty years of age, as his heirs, and in which he directed his executor to act as trustee under the will to invest the net estate at interest or in such manner as he should see fit,

to pay the interest and profits thereof from time to time to his heirs, and to pay the principal to them when Penrose Reed should arrive at the age of forty years. The will was duly admitted to probate on March 4, 1907. T. S. Taliaferro, Jr., named therein as executor, was duly appointed as such, and he, after giving bond, proceeded to administer the estate, paying the last item of indebtedness, aside from premiums on his bond, on June 30, 1910. An inventory and appraisement was filed on March 13, 1907. The executor filed a report on January 18, 1908, another on May 25, 1916, and his final report on July 14, 1923. He testified that he filed other reports which were lost. Objections were made by the heirs to the final report of the executor and to the supplemental report thereto. A hearing on said reports and said objections was had before the court on December 24, 1924. Judgment was rendered on July 25, 1925, in which the court charged the executor with receipts in the sum of $6355.50, credited him with the sum of $2051.18 expenses, with the sum of $963.23 for money advanced to the heirs and with the sum of $319.75 executor's fees, leaving a balance of $3021.34. On this balance the court charged the executor with interest at the rate of four per cent per annum, compounded annually from July 1, 1909, amounting to the sum of $2653.28. The executor was directed to pay such interest to the heirs and to hold the principal sum of $3021.34 for distribution in accordance with the terms of the will. From this judgment the heirs have appealed.

1.   The court, in fixing the principal upon which the interest to be paid by the executor should be computed, first deducted the expenditures, and the sum of $319.75, as fees allowed to the executor under the statute (Sec. 6853, W. C. S. 1920). It is contended that the deduction of the executor's fees should not have been made as of that time; that his fees were not payable until the final accounting, and that interest should have been computed

against him, compounded, at the legal rate, the same as on other amounts. The result would be that the executor would not alone lose all of his commission, to which the statute appears to give him an absolute right, but he would in addition be required to pay at least an equal amount thereof to the heirs. Counsel rely upon In re Hagerty's Estate, 97 Wash. 491, 166 Pac. 1139, and cases therein cited. Without stopping to analyze the rule there announced, and as to when it should be applied, we feel that we are not warranted in the case at bar to reverse the action of the trial court in this respect. The court followed the rule announced in Mathis v. Mathis, 18 N. J. L. 59; Callaghan v. Hall, 1 Serg. & R. 241, and 24 C. J. 87, to the effect that—

"in charging an executor or administrator with interest on funds in his hands at a final settlement, his commission or recompense * * * should be deducted before a balance is struck and the interest is finally computed against him."

2. The executor was and is an attorney at law. He employed two other attorneys, Mr. Preston and Mr. Reavill in connection with some of the matters of the estate, and paid them the sum of $400, divided equally between them. The services were performed mainly in connection with the cancellation of two contracts, made by the decedent in connection with some lands in Idaho, and calling for payments largely in excess of the total amount of assets of the estate. No objection is made to the amount paid to Mr. Preston, but exceptions are taken to the amount paid to Mr. Reavill. The court found that his services were necessary, and we cannot interfere with that finding. Counsel for appellants contend that the total amount that could have been paid to attorneys was, in any event, limited to $319.75, and they base that contention on section 6854, W. C. S. 1920, which provides that

the fees that may be paid to the attorneys of an executor shall not exceed the amount allowed to the executor or administrator except in case of actual litigation. Without determining the full effect or scope of the section, or whether there was actual litigation in this matter within the meaning thereof, we take it that the fees that may be paid to attorneys under it may at least equal the sum *allowable* to the executors or administrators, and that the amount is not dependent upon fees actually paid executors or administrators, for otherwise an attorney could not, at times, be paid at all, if for some reason—in case of waiver, for instance—nothing were paid to an executor or administrator. Now under section 6853, an executor or administrator receives certain commissions—amounting to $319.75 in the case at bar—and the court may allow him fifty per cent thereof in addition. Hence it is clear that the sum paid to the attorneys in this case is not in violation of the amount allowable under the statute.

3. The court, after allowing the executor's fees, claims and expenses paid in the sum of $2051.18 and $963.23 advanced to the heirs, found the balance due from the executor, as already stated, to be the sum of $3021.34, and fixed July 1, 1909 as the date from which such balance should draw interest. The executor's action in charging himself with two per cent interest on the money received by him up to that date was approved. The amount of interest charged is small and the date somewhat arbitrary. The executor, however, held himself in readiness, at all times, according to his testimnoy, to pay the amount due, and apply it on the contemplated purchase of a home for the heirs; and a number of claims due from the estate were paid even after the date above mentioned, the last item, aside from those due for the bond, being paid on June 30, 1910. The proceeding is one in equity; we are constrained to pay due deference to the views of the trial court, and on the whole we are not prepared to hold that

we should be warranted in interfering with the finding of the trial court in these respects. We cannot, however, approve of the action of the court in the charge of interest from July 1, 1909, which was at the rate of four per cent compounded annually. This rate was fixed on the theory that it is the maximum rate charged under our depository law and is the rate usually allowed by banks, and about the rate payable on securities of the United States Government in which an executor is allowed to invest trust money. It is true that trust funds do not, generally, draw a high rate of interest, safety, instead of yield, being considered of paramount importance, and had the funds been invested as above mentioned, we should, probably, not be warranted in interfering with the action of the trial court. But they were not. The executor reported and testified that he mingled the trust money with his own property; that he used the money by putting it into his sheep business, where, he says, "it remains." It has been held that where a bank or trust company is expressly authorized by law to act as executor, administrator or trustee, it is not compelled to deposit trust money in another institution, and is not responsible for a higher rate of interest, while the money is in its hands, than paid on other deposits in its own institution. In re People's Trust Company, 169 App. Div. 609; 155 N. Y. S. 639; Herzog v. Title Guarantee & T. Co., 148 App. Div. 234, 132 N. Y. S. 1114. See St. Paul Trust Co. v. Kitson, 62 Minn. 408. But aside from such cases, in which the legislatures of various states have attempted to meet an apparently modern need, and which we need not consider in greater detail, the rule is still inflexible, reiterated again and again by the courts, that a trustee, including an executor, administrator and guardian, cannot mingle trust money with his own, cannot invest it in his own business and cannot make a profit from the trust money committed to his care. He cannot be permitted to say that the money is as safe

if used by himself as it would be if entrusted as an investment to another.  Perry on Trusts (6th ed.) sec. 429; 39 Cyc. 409; 24 C. J. 77; 28 C. J. 1148.  Thus it is said in In re Hodge's Estate, 66 Vermont 77:

"A trustee is bound to act with good faith.  He is not to use the trust property in his own private business, nor is he to make any incidental profits for himself in its management, nor is he to acquire pecuniary gains from his fiduciary position.  An important duty of good faith prohibits the trustee from mixing the trust property together in one amount, the depositing trust moneys in his own personal account with his own moneys in bank, and all similar modes of combining or failing to distinguish between the two funds.  This rule is designed to protect the trustee from temptation, from the hazard of loss, and of being a possible defaulter, as well as to protect the trust fund."

In view of the fact that a trustee cannot make any profit out of the trust fund, except whatever compensation he may be allowed under the law, it follows that the criterion as to what rate of interest he should be compelled to pay in case he mingles the fund with his own and uses it in his own business, cannot in such case be based on what he could have received if he had invested the fund in securities of the United States or in banks. Since the law attempts to reach all of the possible profits that he has made out of it (24 C. J. 78; Perry on Trusts, sec. 468), the question of interest, in the absence of a showing of what the profits have been, is rather as to what the money has likely earned for him in the business in which he invested it.  The cases in the United States in which he has been charged with less than the legal rate are exceptional.  That has been true generally only where it was reasonably certain that his money earned less.  In the case at bar no showing was made as to what the profits of the money were, and in the absence thereof the rule adopted is that which is most likely to approximate the

actual gains. Cruce v. Cruce, 81 Mo. 676; Assay v. Allen, 124 Ill. 391; Bond v. Lockwood, 33 Ill. 213; In re Estate Young, 97 Ia. 218; Attorney General v. Alford, 4 De Gex M. & G. 483. In England the courts assume that trade capital yields more than the ordinary interest charged to trustees, and hence require him, if he has used the money in his business, to pay the rate which trade capital is presumed to bring, namely five per cent. The rule in the United States is not totally dissimilar. The rate is ordinarily based upon that fixed by the statute in the absence of a contract, which in this state was eight per cent per annum till February 20, 1923, and seven per cent per annum since that time. Section 4133, W. C. S. 1920, as amended by c. 34, Session Laws 1923. That rate is not necessarily controlling (Hinchman v. Fry, (Ind. App.) 147 N. E. 724), nevertheless the statute evinces a policy of what the rate should be in the absence of a contract, and presumably was fixed, partially in any event, because capital will, according to common experience in the community, ordinarily earn at least that rate. Thus it is said in Lewis v. Hershy, 45 Ind. App. 104:

"The evidence shows that the trustee used the money and commingled it with his own for his own profit. Under such circumstances, as a general rule, he would be required to account for interest at the legal rate, as provided by sec. 7952, Burns, 1908, sec. 5200, R. S. 1881."

In Perry on Trusts, sec. 468, the author summarizes the rule applied in the United States as follows:

"If a trustee retains balances in his hands which he ought to have invested, or delays for an unreasonable time to invest, or if he mingles the money with his own or uses it in his private business, or deposits it in bank in his own name, or in the name of the firm of which he was a member, or neglects to settle his account for a long time, or to distribute or pay over the money when he ought to do so, he will be liable to pay simple interest at the rate

established by law as the legal rate in the absence of special agreements. The rule is subject to the qualification that trustees cannot make any advantage to themselves out of the trust fund; and if they make more than legal interest, they shall pay more, as, if they make usurious loans, they shall be charged with all their gain from the use of the money. If the trustee cannot show what amount of interest he has received, he shall be charged with legal interest from the time when the regular investment ought to have been made."

The cases on the subject are collected in note 37 A. L. R. 459-465, and clearly show that the executor in this case cannot be charged with less than the legal rate as above mentioned. Simple interest at the rate mentioned on $3021.34 from July 1, 1909 to July 25, 1925, the date of the judgment herein, amounts to $3810.32, instead of $2653.28, the amount charged the executor by the trial court.

4. The heirs insist that they are entitled to interest compounded annually at the legal rate, and this point has given us no little difficulty. The authorities on the subject are divided. A lengthy note, citing numerous cases, is found in 29 L. R. A. 629 et seq. It is true that in the case at bar the court compounded the interest, but it did so at the rate of four per cent per annum, and that is an altogether different proposition from compounding it at eight per cent. The court charged almost the lowest rate that could well be charged, and thereby clearly and definitely absolved the executor from any willful misconduct and clearly indicated that in its judgment the compounding of interest in the case at bar at the legal rate would be unjust. Except for the trust relation, interest should not be compounded. State v. Richardson, 29 Mo. App. 595; Armstrong v. Walkup, 12 Gratt. 608; Tanner v. Skinner, 11 Bush (Ky.) 120; Clay v. Clay, 3 Metc. (Ky.) 548; Myers v. Bolton, 157 N. Y. 393. Further, compound

interest in a case involving trust relations is not allowed primarily on the theory that the greater the risk which the trustee takes upon himself, the greater shall be the profit of the cestui que trust. It is not primarily allowed as an increased benefit of the beneficiary. If it were simply a question of the amount of profit to be allowed the heirs in this case, we should not, as already indicated, be warranted in disturbing the order of the District Court.

Compound interest in cases like that at bar has been allowed on two different theories. Some of the courts. have assessed it as a punishment. Clark v. Clark, 87 N. J. Eq. 504, 101 Atl. 300; Frey v. Frey, 17 N. J. Eq. 17; Williams on Executors, 3, 1758. Most of the courts, however, have disapproved of this theory, and hold that a court of equity has no right to punish a trustee, but that. compound interest may be assessed in the proper case so that the trustee may not be permitted to make any gains. from the unauthorized use of the fund, and "to make certain that nothing of profit or advantage remains to the trustee." Wheeler v. Bolton, 92 Cal. 159, 28 Pac.. 558; note 29 L. R. A. 623-624, and cases cited; Williams, supra, 1758; Perry on Trusts (6th ed.), sec. 429, note, and sec. 471. So if it appears in any way that the trustee has made more than simple interest, or it may fairly be presumed that he did so, he will be charged more. See cases note 29 L. R. A. 633-636. But we have no way to tell. whether or not he did so in the instant case. There is no evidence in the record to show as to what the profits were. Neither party made any attempt to show them; it probably would have been very difficult to do so, and we cannot see how we can say that the profits exceeded simple interest from the mere fact that the money was invested. in the sheep business. That business has at times doubtless been profitable, and a court may possibly be justified occasionally, from its general knowledge of that business. over a short period of time, to presume that sufficient.

money was made to justify the assessment of compound interest. But in the case at bar a long period of time is involved. We know that the sheep business is hazardous and that hard winters and other unfortunate conditions arise that wipe out all profits. We also know that in the financial and economic panic commencing with 1920, many of the sheepmen and cattle men of this state lost all their accumulations. What the facts were in the case at bar does not appear, but there is at least no positive evidence from which we could infer that the profits made with the money involved in this case were large. In the case of Cruce v. Cruce, 81 Mo. 676, the use of trust funds by a trustee over a period of fifteen years was considered; the court remarked that "the rule of exacting interest from delinquent trustees has nowhere been enforced more rigorously than in our own state;" held that if the trial court had compounded the interest at six per cent instead of ten, it would have been inclined to pass it, and then proceeded:

"But as every case must be determined according to the facts and circumstances peculiar to it, I am satisfied that it would be inequitable to order interest compounded at the high rate of ten per cent per annum against the respondent. My reasons for this conclusion are as follows: First the account extends through fifteen years. The result of the computation, like all such arithmetical results, would be surprising and excessive. It would in my judgment exceed what could be expected from any prudent and careful administration of the estate under ordinary circumstances. I think it would be a marvelous achievement for any trustee of ordinary skill and prudence to keep a fund of five or six thousand dollars so constantly and securely invested for a period of fifteen years as to produce the net result of compound interest at ten per cent per annum. * * * The exaction of compound interest at such a high rate, for so long a period of time, would, in my judgment, be a departure from the leading principle which requires the chancellor to approximate as

nearly as possible the actual or presumed gains and profits of the fund.''

The reasoning and holding in In re Estate J. C. Ricker, 14 Mont. 153, 35 Pac. 960, 29 L. R. A. 622, which contains an extensive discussion of the history of assessing compound interest, is the same. So in the case of Clarkson v. De Peyster, 1 Hopk. Ch. 424, 427, the court said:

''The medium which shall deprive the trustee of gain without subjecting him to loss, and shall do justice to both parties, is a point which cannot be attained with exactness, by any computation of interest; but in all ordinary cases, simple interest at seven per cent per annum will sufficiently reach that point; and if simple interest does not always attain the justice of these cases, compound interest at seven per centum, will in general immoderately exceed the desired point of equal justice. A guardian is bound to fidelity and ordinary diligence in the administration of the funds of his ward; but as the want of fidelity or diligence, is infinitely varied by the circumstances of different cases, no uniform rule of damages or redress has been established. The most general rule is that which charges the guardian with ordinary interest. When profits are earned from the trust fund, they belong to the ward. Compound interest has been allowed in a few cases of gross delinquency; but such interest when computed at a high rate, becomes oppressive and unjust.''

It appears to be a general rule that a trustee will not be charged with compound interest, at least at a high rate, except where his conduct has been willful. That is done, as some of the cases put it, only in extreme cases. 24 C. J. 506; 24 C. J. 87; Myers v. Bolton, supra. A number of courts, however, seem to proceed on the theory, that where a trustee uses trust funds, he is guilty of willful misconduct justifying the imposition of compound interest, at least where it does not appear what the profits were, holding that it is the duty of the trustee, if he wishes

to be relieved from the payment of compound interest, to show that he did not realize profits equal thereto. See 24 C. J. 88; Crowder v. Shackleford, 35 Miss. 321; 360; Wheeler v. Bolton, supra; Perry, supra, sec. 471. Other cases, however, will not allow compound interest, unless it appears from the evidence that the profits realized by the trustee on the trust fund will justify it. Moyer v. Fletcher, 56 Mich. 508; Garniss v. Gardner, 1 Edw. Chanc. 128; McKim v. Blake, 139 Mass. 593; Cruce v. Cruce, supra; Clarkson v. De Peyster, supra; Fox. v. Wilcocks, 1 Binney 194; Utica Ins. Co. v. Lynch, 11 Paige 520. Underhill on Trusts and Trustees (8th ed.), 475, in speaking of the rule in England, says: "It is suggested that the present tendency of the court is not to give compound interest unless there is evidence to prove that it would fairly represent the trustee's probable profits." The difference in opinion seems to be partially accounted for by reason of the fact that some of the courts have felt that the doctrine that trustees must be deprived of all profits made by them out of trust funds must not be pushed too far, lest it "should inspire dread of all trusts and drive honest men from their acceptance." Fall v. Simmons, 6 Ga. 265; Clarkson v. De Peyster, supra.

Whatever the diversity of opinion among the courts has been, it has been mainly only as to details and as to methods by which to arrive at the ultimate aim of justice between the parties and to deprive a trustee of any benefit that he may have derived from the improper use of trust funds. Hence, it is recognized that each case must depend somewhat upon the circumstances (Fox v. Wilcocks, 1 Binney 194; Cruce v. Cruce, supra), although in the greater number of cases, perhaps, compound interest has been allowed where a trustee has used the trust funds. The general rule in a case where a trustee has used the trust fund is not stated to the effect that compound interest *must* be exacted in every case, but that it *may* be

exacted. 39 Cyc. 430; 24 C. J. 88. One of the leading cases on the subject in this country is Schieffelin v. Stewart, 1 Johns. Ch. 620, commented on at length in the case of In re J. C. Ricker, supra. The court allowed compound interest, indulging in the presumption that the profits made by the trustee out of the trust fund justified it. The chancellor remarked that the trustee could have disclosed his profits, but failed to do so. It may be altogether reasonable to indulge in such presumption where a trustee refuses to disclose his profits, and that may be true also where he fails to do so, when he is able. In the case at bar the trust fund was invested in the sheep business, apparently along with other money of the trustee in 1907 and 1908. We are inclined to believe that it would have been most difficult for the trustee to have given any account of what he made or lost on the particular money involved in this case. At least, we feel satisfied that the trustee did not fail to render an account thereof willfully. There was no suggestion on the part of the heirs that he should make such a showing; the case seems to have been tried on an altogether different theory, and under the circumstances we do not feel justified in indulging in the presumption above mentioned merely by reason of his failure to show to the court the amount of profit, if any, that he made out of the trust money, and feel satisfied from the record, that if a suggestion had been made to him at any time to disclose such profits, he would have done so, if possible. Further, the court laid great stress on the provisions of the will authorizing the executor to invest the trust fund in "such manner as he shall see fit," and evidently concluded that, in view thereof and in view of the facts, the executor should not be charged with the lack of good faith. We have found no authority, and none has been cited, which has construed such a provision in the will as a sufficient authorization for an executor to use trust funds in his own business, and yet we are not

prepared to say that under the circumstances of this case, and in the absence of judicial decisions on the subject in this state, such provision should not be taken into consideration in determining the good faith of the executor. And we must further bear in mind that the heirs in this case were not minors. They both were of age as early as 1908, and after that time they were no longer under the special guardianship of the law as minors are. State v. Richardson, 29 Mo. App. 595. They were at all times able to protect themselves by applying to the court. In Amos v. Campbell, 9 Fla. 187, it was held that where there has been an unreasonable delay on the part of a distributee to call an administrator to account, he will be allowed at fartherest only simple interest. See also 24 C. J. 506. And in Feighan v. Reeves, 61 Wash. 465, 112 Pac. 627, the court said in a similar case that if one of the parties was careless in accounting, the others were slothful in demanding an accounting. The heirs in the case at bar sought to exculpate themselves from any blame. They testified that they made frequent demands on the executor, but that these demands went unheeded. But the letters introduced in evidence show these demands to have been confined to short periods of time. A letter written in 1908 to the executor asked him to render an account and settle up the estate. Then nothing further appears until 1916, unless a letter written to Judge Craig in 1911 came to the executor's attention, which has not been shown. The heirs were at one time in correspondence with an attorney in this state, but no action was taken through him. Some sort of petition seems to have been addressed to the District Court in 1916, the contents of which were not shown. The executor then filed a report. That seems to have been satisfactory. At least nothing further was done under the petition, and it was dismissed in 1921, almost showing an acquiescence of the conduct of the executor. The main requests for an ac-

counting were made from 1921 to 1923. The executor promised to make a full report, and made these promises at various times, and while it took two years for him to do so after the first request was made in 1921, this we are satisfied, was not due to willful misconduct.

Taking all of these facts into consideration, and in view of the deference due to the District Court, we do not feel warranted in modifying the judgment in this case to the extent of allowing compound interest at the legal rate, and believe, without discussing other points mentioned in the brief, that the judgment should be modified only to the extent already indicated herein.

The judgment of the District Court should, accordingly, be modified to the extent that the interest due at the time of the date thereof be fixed at the sum of $3810.32, instead of $2653.28, and as so modified should be affirmed. It is so ordered, the costs of this appeal to be paid by respondent.

*Modified and Affirmed.*