EMMA A. SPRUANCE

*vs.*

EQUITABLE TRUST COMPANY, Executor of the Last Will and Testament of James Harvey Spruance, Deceased.

*New Castle, March* 16, 1918.

The common-law disability of husband and wife to contract with each other still exists, and such contracts cannot be enforced in an action at law during coverture or against the representatives of the deceased spouse; and the remedy of the surviving spouse is by equitable assumpsit.

An allegation that a certain transaction constitutes a loan of money by a wife to her husband is not supported by evidence that she expended her own money on improvements made to his real estate.

Where a wife pays to her husband money for the purchase of land as her agent, and with her knowledge he takes title to the land in his own name, she is entitled in equity to recover from his estate the money so paid to him, and also the profits made on a resale by him of the land and the net rents thereof, even in the absence of an agreement on his part.

The unexplained payment of money by a wife to her husband does not raise a presumption that a loan was intended, and she is not entitled to enforce repayment in a court of equity.

Interest is payable to a wife for her money used by her husband, as her agent in the purchase of real estate in his own name; he being chargeable as trustee.

BILL IN EQUITY by a widow to have the executor of her deceased husband repay to her certain sums of money alleged to be due on account of loans to and payments made on account of her husband. The cause was heard on bill, answer, testimony of witnesses produced before the Chancellor and exhibits. The facts appear in the opinion of the Chancellor.

*Franklin Brockson,* for complainant.
*Hugh M. Morris,* for defendant.

THE CHANCELLOR. The complainant seeks to recover from the executor of her deceased husband certain moneys of her own and not obtained from her husband. Having on deposit in a bank $5,000 she drew four checks. One check was to the order of Heaton & Wood for $476. On the stub of the check book were the words "Hardwood floors," and it was shown that the payee had theretofore put down new floors of hardwood in the dwelling house owned by the complainant's husband, and which was their residence. Another check was to the order of her husband for $3,100, and on the stub in his handwriting were the words "Two houses 111 & 113 Franklin." It was shown that in July, 1915, he purchased at public sale two houses, Nos. 111 and 113 Franklin Street for $1,750 each, declaring at the time that it was his wife's money that he was investing in the houses. The title was taken in his name, and afterwards he and his wife joined in mortgaging the houses. In November and December, 1916, they joined in deeds

conveying them to the purchasers to whom they were sold at an advance of about $375, and he not only received the rents of the houses while the title to them was in him, but also the money realized by the resale thereof. She also gave him two other checks, one for $500 on October 19, 1915, and the other on December 27, 1915, for $400.

Dr. Spruance died May 15, 1917, entirely solvent, and by will made provision for his wife, but made in it no mention of transactions between him and her. All of the checks bore the indorsement of the payees, and were paid from her bank deposit. This was substantially all of the pertinent facts. There was no evidence showing a promise or agreement on his part to return any of the moneys represented by the checks, or account with his wife as to the rents or profits derived from the real estate which he bought and sold, or to repay her the money spent by her for hardwood floors. It was not shown that the new floors were necessary repairs or an unnecessary improvement to his real estate. Neither was it shown whether the moneys had or had not been repaid in the life of the husband. It was not shown what use was made of the sums of $400 and $500 paid to him. Of course, the wife was under a statutory disability to testify as to any statement by or transaction with her deceased husband, because she was a party to the cause in which a decree was sought against his estate.

There is no difficulty as to the jurisdiction of this court to decide the questions raised. Elsewhere the disability of husband and wife to make contracts is said to exist only during coverture, and that upon the termination thereof by death, or divorce, the contractual rights may be enforced, in the former case by or against the representative of the deceased spouse. But such is not the law in Delaware. A bond given by a wife to her husband for moneys of his loaned to her for use on her sole and separate property is invalid and cannot be enforced at law either during coverture or after the death of either or both of them. See *Masten v. Herring*, 6 *Pennewill*, 282, 66 *Atl.* 368, and affirmed by the Supreme Court, where the executor of a married man brought an action of debt against the administrator of his wife on a bond given the husband by his wife during coverture. Therefore there is nothing in the act concerning the rights of married women to

change the well-established jurisdiction of an equitable assumptist by a widow against the representative of her deceased husband. 2 *Story's Equity Jurisprudence*, §1368.

Under the allegations of the bill the complainant is not entitled to repayment of the money represented by the check for $476. By the bill it was claimed to have been a loan by her to her husband which implies a promise of repayment; whereas the proof made by her was that the check was given in payment for floors put down by the payees in her husband's dwelling house, which is quite a different thing from a loan of money and inconsistent therewith. Therefore, it is not necessary to decide the question discussed by counsel, as to whether in the absence of a promise a wife may recover from her deceased husband's estate money expended by her from her own moneys on his dwelling house.

One question to be decided is whether the estate of her husband is liable to the complainant for the moneys paid by her to her husband and by him used in the purchase of real estate, and if so, to what extent. The facts are very bare. By joining in the mortgages and conveyances of the land which he purchased with her money, she presumably knew that he had taken title in his own name, sold the property at an advance and received the settlement. But it is not necessary to depend upon presumptions of law as to liability arising from the few known facts, if it has been shown that in these transactions he was acting as her agent.

There is in this State a decision of Chancellor Saulsbury directly bearing on the questions raised in this case, viz., the case of *Hood v. Jones*, 5 *Del. Ch.* 77 (1875). In that case land in Baltimore was purchased with money of Araminta Jones, then the wife of Charles R. Jones, and title thereto taken in the name of a trustee for her as fully as though she were a feme sole. Afterwards, the trustee being dead, she and her husband mortgaged the land for $2,300 to secure the payment of money which according to the mortgage was distinctly loaned to her husband by the mortgagee. The mortgagee gave to the wife a check for the money so loaned and she indorsed it over to her husband. The mortgaged property was then sold and conveyed by the mortgagors for $4,000, and a check for the balance, after deducting the mortgage debt, was given to the husband for the account of his wife, and he indorsed

the check expressly as her agent and received the money. He then gave a judgment bond for $4,000 to a trustee for his wife. Later he engaged in business, and failed and his creditors recovered a judgment. Before they obtained a levy, judgment was entered on the bond held by the trustee for Araminta Jones, a levy on her husband's goods was made and the same were sold. The creditors of the husband filed a bill against the husband, his wife, her trustee and the sheriff alleging fraudulent collusion to prevent them from collecting their claims. The bill was dismissed, Chancellor Saulsbury holding that in making the mortgage of her own property for his debt the relation of principal and surety arose, and she was entitled to all the rights arising from the relationship, including reimbursement. Also that the receipt by her husband as her agent of the proceeds of sale of her land over and above the mortgage debt created the relation of debtor and creditor between them. That, therefore, the bond was not fraudulent, but was executed for a consideration which in equity is sufficient and made the bond valid.

In the opinion the Chancellor found that the bond would not have been valid as a voluntary one, or as a settlement for his wife, but only as an acknowledgment of an indebtedness. He distinctly based his opinion not upon the law of Maryland, where the land in question was located, but upon general equitable principles. 5 *Del. Ch.* 99. After reviewing authorities he found that two principles were established: (1) "The receipt and appropriation by a husband of money constituting the separate estate of his wife with her knowledge and acquiescence does not establish the relation of debtor and creditor between them and entitle the wife to compensation out of her husband's assets, unless at the time of such receipt there was an understanding, between them that he should repay the money so received and appropriated; and that in the absence of such an understanding, the law presumes the money to be a gift by the wife to the husband." (2) When, however, she joins her husband in mortgaging her separate estate for the payment of his debt, no such presumption arises, but on the contrary the law determines the relation which arises from the transaction to be that of principal and surety, and like any

other surety she is entitled to reimbursement from him if the debt is paid from her separate property.

Applying these principles he found that she was surety for the mortgage debt of $2,300 and entitled to reimbursement by him. Also that in receiving the balance of the purchase money for her land, over and above the mortgage debt, on a check drawn in his favor for her, and indorsed by him as her agent, he thereby became indebted to her in the amount so received.

There is, therefore, deducible from this opinion and decision this principle: The receipt and appropriation by the husband of his wife's separate property with her knowledge and acquiescence, does not in the absence of an understanding or agreement between them create the relation of debtor and creditor; but that it is otherwise if he receives her separate property as her agent, even in the absence of such agreement or understanding.

It should be noted that this case was decided before married women were by statute given control of their separate property as fully as though a feme sole, and this element will be considered later in this opinion.

There is in this case now before this court sufficient evidence to show that in the purchase and sale of the real estate the husband was acting as agent for his wife. Contemporaneously with the purchase, and against his interest, he declared in substance that it was his wife's money he was investing in the houses, and in view of their relationship it is a fair inference from this that it was an investment made for her. This creates either a trust or an agency, and the result is the same in either case, viz., he, and since death his estate, is liable to her for the money, or for the results of the use thereof by him. Slight circumstances will determine the character of transactions between husband and wife in order to do justice to both. Therefore, the complainant is entitled to be repaid the sum of $3,100, the profit made by the sale of the houses and the net rents thereof received by him, these being features of accountability arising from agency or trusteeship.

As to the moneys paid to Dr. Spruance, $500 and $400, there is no evidence of the use made of the moneys; no evidence of an agency respecting them; nothing to show any understanding or agreement respecting them; and no evidence at all even tending

to show whether they were gifts or loans, or payments made for investment. As to them, therefore, imputed presumptions, if any there be, are the only guides.

It is clear that Chancellor Saulsbury would have held these payments to be gifts, and would have denied the widow a right to be reimbursed from her husband's estate. Should his statement of the law be followed here? True, on this branch of the case his announcement of the law was an *obiter dictum*. But it was a clear conviction, was based on authority, and was cognate and germane to the points actually decided, which were in a sense an exception to the general rule which he first announced. Furthermore, it was a declaration made more than forty years ago, and stands unchallenged in this State. The later case of *Williams v. Morgan*, 6 *Houst.* 439 (1881) in the Court of Errors and Appeals, was not inconsistent with it, and though from the report of the case *Hood v. Jones, supra*, does not seem to have been cited or considered, the two cases are in harmony, and indeed one may find in the later case a confirmation of the earlier one.

While the point actually decided by the Court of Errors and Appeals in *Williams v. Morgan*, affirming a decree in Chancery, does not bear directly on this case, yet it does touch it remotely. There a husband by the direction of his wife and as her agent sold land belonging to her, and with the proceeds of sale bought other land and had the title conveyed to her. A judgment creditor of the husband having levied on the land, she filed a bill against the judgment creditor of her husband to enjoin a sale thereunder and obtained a decree, which was affirmed on appeal. Both the Chancellor and the appellate Court laid stress on the existence of an understanding and agreement between the husband and wife made during coverture, that the proceeds of sale of her own land should be reinvested in other land, and enforced that agreement. Would the court have reached the same result in the absence of such an agreement? Or in the absence of such an agreement, would it have held that the receipt by the husband of the proceeds of the sale of the wife's land was a reduction thereof into his own possession so that it became his own, and that the subsequent use thereof by him in the purchase of other land and taking title thereto in her name was in fraud of his creditors?

If as between husband and wife there was a resulting trust in her favor arising from the transaction in the absence of an agreement between them on the subject, then why rely on the express agreement to secure to her as against his creditors the right to the land purchased with the proceeds of the sale of her land? As between persons other than husband and wife the question could not arise, for there would be such resulting trust, and besides the land of one person could not be levied on for the debt of another person.

This case may, therefore, contain an indirect recognition of the principle that if a husband receives from his wife her own money he is not accountable to her as to the use he makes of it in the absence of an agreement or understanding between them that it is to be returned, or held, or used, for her use, or there be other circumstances from which it may be deduced that they intended to create the relation of debtor and creditor, or trustee and beneficiary, principal and agent. This case also was decided before the rights of married women were enlarged.

If one looks at the decisions of courts of other states for guidance, he finds a variety of decisions and of reasons given therefor. The courts in Pennsylvania at an early date found that the passage of acts giving to married women property rights as though single, changed the rule theretofore existing, and that the receipt by the husband of his wife's property constitutes him a trustee for her, in the absence of evidence to the contrary, *Wormley's Estate*, 137 *Pa.* 101, 102, 20 *Atl.* 621, and cases there cited. But as established by later cases as a modification of the earlier rule, it must be shown by clear proof that land purchased by him was so bought with her money, and that it was her intention to take title to the land in her own name, or in the name of her husband in trust for her. *Cornman's Estate*, 197 *Pa.* 125, 46 *Atl.* 940; *McCormick v. Cooke*, 199 *Pa.* 631, 49 *Atl.* 238.

Following the reasons given in the earlier Pennsylvania cases, which were expressly cited, the Supreme Court of the United States in *Stickney v. Stickney*, 131 *U. S.* 227, 9 *Sup. Ct.* 667, 33 *L. Ed.* 136, held that because of the enabling act as to married women there was no presumption of a gift where a husband acquires possession of his wife's separate property, whether with or without

her consent, but that he is to be considered a trustee for her in the absence of direct evidence of a gift.

The courts in Indiana (*King v. King*, 24 *Ind. App.* 598 [1900], 57 *N. E.* 275, 79 *Am. St. Rep.* 287, and Indiana cases there cited), and Kansas (*Carter v. Becker*, 69 *Kan.* 524, 77 *Pac.* 264), Michigan (*Sykes v. City Savings Bank*, 115 *Mich.* 321, 73 *N. W.* 369, 69 *Am. St. Rep.* 562), and Missouri (*Scrutchfield v. Sauter*, 119 *Mo.* 615, 24 *S. W.* 137), also followed the Pennsylvania courts and for the same reasons.

In Illinois the court found that a trust resulted in favor of a married woman who furnishes the purchase money for land, title to which is taken in the name of her husband, applying the same rule as between persons not in the relationship of husband and wife. *Wright v. Wright*, 242 *Ill.* 71, 89 *N. E.* 789, 26 *L. R. A.* (*N. S.*) 161.

In New Jersey it is settled that the receipt by a husband of his wife's money presumptively makes him her debtor as to the principal sum, and the burden is on him to show the contrary. But it is otherwise when he received income from her property. *Jones v. Davenport*, 44 *N. J. Eq.* 33, 13 *Atl.* 652; *Black v. Black*, 30 *N. J. Eq.* 215, 219; *Adoue v. Spencer* (Court of Errors and Appeals) 62 *N. J. Eq.* 782, 49 *Atl.* 10, 56 *L. R. A.* 817, 90 *Am. St. Rep.* 484. In the case last cited this language is used:

"Since 1848, which was about the year of the beginning of the statutory creation of the wife's separate property rights, the trend of the decisions in all the states has been toward the rule here contended for. It can safely be said that with scarcely an exception the Supreme Court of the United States and the courts of last resort of all the states have held that as to the principal of the wife's separate estate, taken into the possession of a husband and used by him, he or his personal representative is bound to account to her, and that to sustain a refusal to so do, or to relieve from equitable liability to so do, the burthen is on him to establish that he received such property as a gift from her. His mere possession of it will not imply such a gift any more than it would from a like receipt from any other person. There appears no good reason either in law or morals why such should not be the rule."

In *Black v. Black*, cited above, the Court after stating the general rule as to trusteeship where a husband acquires possession of his wife's property, made a distinction in the result where there is an appropriation by a wife herself of her separate property.

But this distinction was not noticed or applied in the later cases in New Jersey.

On the other hand the courts in Massachusetts, New Hampshire, Virginia, West Virginia and Maryland take a different view.

In *Jacobs v. Hesler*, 113 *Mass*. 157, 160, a wife placed her money in the hands of her husband, and there was no evidence as to a trust or agreement. The Court held there was a presumption of a gift.

> "A husband and wife cannot make contracts with each other; and, though he may doubtless be a trustee for her, yet when a wife with her own hand pays money of her separate property to her husband, there is no presumption that he receives it in trust for her, but the burden is on her to prove the fact. In the absence of such proof, the money must be deemed to have been given to him with the intention that it should be applied to the use or benefit of either or both of them at his discretion."

See, also, *Brown v. Wood*, 121 *Mass*. 137, and *Thacher v. Churchill*, 118 *Mass*. 108.

In *Coburn v. Storer*, 67 *N. H*. 86, 36 *Atl*. 607 (1891), the Court said:

> "The delivery of money without other evidence of the contract between the parties raises no presumption of law that it was intended to be a loan, rather than the payment of a debt or a gift. Its legal effect would necessarily be very different in different cases, and a legal presumption that it amounted to a loan in a given case would be as likely to defeat as to carry out the intention of the parties. The intention of the parties, found as a fact from competent evidence, must determine the character of their act. * * * Whatever weight the marital relation existing between the defendants might have as evidence upon that question, it does not furnish a legal presumption of a loan, which would not exist if Mrs. Storer had delivered the money to some one other than her husband. While the statute * * * removed certain common-law disabilities of married women, and authorized them to make contracts generally as if they were unmarried, it did not give them the benefit of a legal inference not applicable to similar transactions between other people."

The Virginia courts hold that when the husband receives his wife's money, there is no presumption of a loan, and she cannot claim repayment of it as a loan as against her husband's creditors. *Beecher v. Wilson*, 84 *Va*. 813, 6 *S. E*. 209, 10 *Am. St. Rep*. 883; *New South, etc., Co. v. Reed*, 96 *Va*. 345, 31 *S. E*. 514, 70 *Am. St. Rep*. 858.

In *Whitten v. Whitten*, 70 *W. Va.* 422, 74 *S. E.* 237, 39 *L. R. A.* (*N. S.*) 1026, *Ann. Cas.* 1915D, 647, it was held that money of a wife invested in land in the husband's name is presumptively a gift, and in the absence of facts and circumstances refuting the presumption there is no resulting trust in her favor. The relationship makes this an exception to the rule that the trust results in favor of the person paying the purchase money in the absence of evidence to the contrary. This presumption of a gift accords with general legal principles, such as advancements by a grandparent of money for land taken in the name of a grandchild where there is no obligation for support; or by husband and title is taken in the name of the wife; and services rendered by a person to a near relative are presumably gratuitous.

In *Grover v. Radcliff*, 63 *Md.* 496, 500, the Court said:

"The wife having the *jus disponendi* of her separate property, if she thinks proper to let her husband have it, or appropriate it, without any express promise or agreement at the time to account for or repay her the amount so received or appropriated, she cannot afterwards set up a claim against her husband upon the footing of a creditor."

Since there is this contrariety of decisions, the reasons therefore should be weighed. Too much weight and effect was given to the spirit of the Married Women's Act in Pennsylvania, and in the states which followed the decisions of its courts. The argument is this: Before these statutes the husband could take her money without her consent, and it became his; but after the statute if he acquired her property it did not become his unless it be shown that she intended it as a gift, and therefore he took it as trustee, or became her debtor. That argument would be good where he receives her property without her knowledge, or without her consent being shown, and some of the cases cited are of this kind. But where she being in possession of her own property voluntarily hands it over to him, and there is no circumstance showing a purpose or reason for so doing, then the spirit of the enabling acts has no bearing.

It is no longer necessary to protect her from her husband for the law does that. With freedom has come responsibility to take care of her own property interests. Neither can it be assumed that every married woman is unduly controlled by her husband

in the expenditures of her own money. It is not sound, therefore, to say that when a wife voluntarily hands over to her husband her own money, and there is no explanation of the circumstances, there is presumptively a resulting trust in her favor which makes him either her debtor or trustee, so as to make him or his estate accountable to her for a return thereof.

So also the theory of a resulting trust does not seem logically applicable. Of course, as a general principle a trust results in favor of the purchaser whose money pays for land. *Newell v. Morgan*, 2 *Har.* 225. But there are well established exceptions to this rule, as where there is an obligation to support, or where one stands *in loco parentis*, or even where there is a less close relationship. As was said in *Getchell v. Biddleford, etc., Bank*, 94 *Me.* 452, 47 *Atl.* 895, 80 *Am. St. Rep.* 408, relationship is a circumstance, though not a controlling one. It is because of the close relationship of a husband and wife that a delivery of property from him to her presumes a gift. *Smith v. Montgomery*, 5 *T. B. Mon. (Ky.)* 502; *Veeder v. McKinley*, 61 *Neb.* 892, 86 *N. W.* 982; *Selover v. Selover*, 62 *N. J. Eq.* 761, 48 *Atl.* 522, 90 *Am. St. Rep.* 478. So also from parent to child. *Jenning v. Rhode*, 99 *Minn.* 335, 109 *N. W.* 597.

Why, then, should not this relationship of a wife towards her husband stand as evidence of a gift when she herself voluntarily hands over to him her own money, and there be no other explanation of the transaction? As married women now control their own property and may deal with it as they please, why should not some significance be given to her unexplained act of delivering money to her husband? Being now protected by the statute, she does not need the protection of a presumption of a loan in such transaction.

On the whole, it seems clear that a presumption of either gift or a loan would in this and many other cases be as likely to defeat as to carry out the undiscovered intention of the parties to the transaction, so that there is here no ground to presume a loan, and no evidence of one, or of any fact except the payment of money by a wife to her husband. It is doubtful if any court ever upheld a right to reimbursement under such circumstances.

This case is an illustration of the importance of clear under-

standing as to financial transactions between persons standing in close relationship to each other, and the prudence of the giving of proper evidences of the intentions of the parties to such transactions, as is done in the commercial world even as between persons who have full confidence in the integrity of each other.

The conclusions are, that in the purchase of the two houses with his wife's money, Dr. Spruance acted as agent for his wife and his estate is, therefore, accountable to her for the money so used and the rents and profits thereof. I also find that the payment to him by her of two sums of her own money with no explanation thereof made, or circumstance shown, concerning the transaction, or the use made thereof by him, does not show a loan by her to him, or raise an equitable assumpsit to return it to her, and she is not entitled to repayment thereof from his estate.

It is claimed that the complainant is entitled to interest, on the theory that the husband being a trustee was chargeable with interest from the time he mingled the wife's money with his own. The authorities have viewed the question differently. In *Wormley's Estate*, 137 *Pa.* 101, 20 *Atl.* 621, where the wife's money received by her husband was used in erecting the house in which they lived, and because she had shared in the benefit derived from the use made of the money, the Court gave her interest only from the time of the death of her husband. The Applellate Court of Indiana in the case of *King v. King*, 24 *Ind. App.* 598, 57 *N. E.* 275, 79 *Am. St. Rep.* 287, where the husband used his wife's money in his business denied interest because there was no agreement to repay the money, or a demand for and refusal of repayment. But in a later case in the Supreme Court of Indiana, *Stanley's Estate v. Pence*, 160 *Ind.* 636, 644, 66 *N. E.* 51, 67 *N. E.* 441, where the husband purchased real estate for himself with his wife's money "thereby converting it to his own use and profit," as the Court said, he was charged as trustee with interest, that being most equitable in this case, the Court saying that the question of charging a trustee with interest depends on the facts and circumstances in each particular case.

On the whole, then, it is equitable to require the estate of Dr. Spruance to pay to his wife lawful interest on the sum of $3,100 from the time it was received by him in 1916.

The costs will be made payable from the estate of the decedent.