## OREGON SHORT LINE R. CO. v. TETON COAL CO. et al.

Circuit Court of Appeals, Ninth Circuit.
November 12, 1929.

No. 5924.

Geo. H. Smith, of Salt Lake City, Utah, and H. B. Thompson and L. H. Anderson, both of Pocatello, Idaho, for appellant.

J. H. Peterson, O. R. Baum, and D. Worth Clark, all of Pocatello, Idaho, for appellee Chaffee.

Roy L. Black, of Pocatello, Idaho, J. D. Skeen, of Salt Lake City, Utah, A. H. Wilkie, of Idaho Falls, Idaho, and H. F. Samuels, of Sam, Idaho, for other appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. This suit is upon a bond executed in favor of the plaintiff (appellant) by defendants Teton Coal Company, H. F. Samuels, Robert H. Harlin, and Karl A. Reichert, as principals, and their codefendants as sureties. In the court below there was a judgment of dismissal on the pleadings.

When the bond was given the coal company was the owner of a partially developed coal mine at Talbot, Idaho, and the other principals. named were operating it under a lease. The plaintiff is and was the owner of a railroad system in Idaho and other states, a part of which was a branch or spur track about nine miles long extending from a junction at Tetonia, Idaho, to Talbot, its terminus. Plaintiff having abandoned the operation of this spur, the coal company and its lessees, on April 7, 1924, filed a complaint with the Public Utilities Commission of Idaho representing that they would have coal available for transportation and praying for an order requiring plaintiff to repair and operate the spur. In a hearing had upon the petition in due course, it was made to appear that not only would repairs be required, but for safe operation, at least during a portion of the year, it would be necessary to construct at the Talbot terminus a wye so that locomotive engines could be turned and operated in a forward direction in hauling coal to the junction at Tetonia, the cost of which was estimated to be $27,160. The upshot of the proceeding was that the commission entered an order provisionally requiring the plaintiff to rehabilitate and operate the spur, the condition being that the petitioners guarantee coal shipments of sufficient magnitude to justify the new construction. That is to say, the petitioners were to assume the obligation to reimburse the plaintiff for the expenditure, but were to have the privilege of discharging the obligation by making coal shipments upon which they would receive credit at the rate of 20 cents per ton; and upon the assumption that the cost would be as estimated, they were specifically accorded the privilege of extinguishing their entire obligation by shipping at least 29,920 tons of coal during each year of twelve months for a period of five years. There were certain qualifying conditions which will be referred to in an analysis of the bond sued upon, which was required by the order and which was given to and accepted by plain-

tiff as being in harmony and in full compliance with the terms thereof.

Yielding to the order, the plaintiff, on August 8, 1924, notified the petitioners that it was necessary to complete the construction of the wye within 30 days and demanded of them the bond for $27,160, as required by the order. Accordingly, the bond was delivered and accepted on or about September 8, 1924. From a copy of the instrument exhibited with the complaint, it appears that the obligatory part is in the usual form and binds the obligors in the sum of $27,160. In defining the conditions thereof reference is made to the proceedings before the commission and the final order, which is quoted in part, and also to the notice and demand of the plaintiff above referred to. Thereupon the obligors severally agree that the principals will deliver for shipment 29,920 tons of coal within every "12 months from the date of the commencement of the operation" of the spur, and in case of their failure so to do they will pay to plaintiff at the rate of 20 cents per ton for the shortage, unless shipment was prevented by "fire, floods, riots, wars, earthquakes, or acts of God"; also "in case of cave-in or cave-ins" occurring in the mine "the time limit of any 12 months period shall be extended without penalty" for not to exceed 6 months; and in case of a strike the extension was to be for not to exceed 30 days. But in no event was the five-year period for the delivery of the aggregate amount of 149,600 tons to be extended on account of strikes and cave-ins for more than 15 months. It was also provided that in case of delay by plaintiff in furnishing cars the 12 months period should be correspondingly extended. In the body of the bond is this paragraph: " * *. * The principals may have an inspector on the work while said wye is being completed who shall have access to all the costs of doing the same, and upon the completion thereof, if the actual amount of money expended is less then the estimate, to-wit: $27,160.00, the principals at their option may reduce their bond to the actual amount of money expended by the Oregon Short Line Railroad Company for such purpose."

And the closing paragraph is: "All settlements shall be made within 60 days of the completion of each 12 months period and extensions, as provided in said Order 957, and the liability of this obligation may be reduced at the completion of any 12 months period of actual coal shipments, as hereinbefore provided, in such amount as may be determined by the Public Utilities Commission of the State of Idaho to be just and reasonable, upon application made to said Commission at the expiration of any such 12 months period."

In the record we do not find the date upon which the action was commenced, but the complaint was verified on June 13, 1928, and we assume it was filed on or about that date, which, it will be observed, was prior to the expiration of the five-year period. In substance the complaint alleges that on July 7, 1924, the spur was ready for operation and cars were placed for loading, and of these facts the defendant principals were advised on that date, though the wye was not completed until December 18, 1924; that the total cost of the wye was not $27,160 as estimated, but $22,071.72; that at the time the complaint was filed coal mining had been completely and indefinitely suspended, and the coal company was in the hands of a receiver, and that in view of these conditions and the season of the year no further shipments could be expected prior to July 8, 1928; that during the period of four years from July 8, 1924, to the anticipated date of July 8, 1928, the coal company and its codefendants had offered for shipment only 21,393 tons; and that hence there was due plaintiff under the bond 20 cents per ton on 98,287 tons or a total of $19,657.40, for which plaintiff asked judgment.

As one of their defenses, the defendants set up in their answer a certain proceeding instituted by them and still pending, before the Public Utilities Commission. Copies of the record therein having been attached to the answer and plaintiff having appropriately conceded their correctness, defendants moved thereon for a judgment on the pleadings, with the result already stated.

It seems that on July 24, 1925, plaintiff rendered to the coal company a statement to the effect that during the 12 months period ending July 8, 1925, there had been offered for shipment only 4,560 tons of coal and demanded payment for the shortage at the rate of 20 cents per ton, amounting to $5,072. Declining to make payment, defendants, on August 18, 1925, filed with the commission an elaborate petition setting up in detail the history of the proceeding culminating in the execution of the bond, and certain alleged conditions and transactions thereafter—all upon the theory that under the terms of the bond, and particularly the last paragraph thereof, the commission was authorized to grant relief of some character. Great delay ensued, the reasons for which are not shown, but apparently all parties were content with inaction. However that may be, on March

1, 1926, by a written opinion the commission denied the railroad company's motion to dismiss for want of jurisdiction, holding that within a restricted range it had power to act; and on or about March 9, 1928, the railroad company filed an answer raising certain issues of fact. Nothing more was done in the proceeding, and such was its posture when this suit was commenced two months later. As already indicated, the pendency of the proceeding is the sole ground upon which the motion for judgment was made and allowed.

By the lower court the view seems to have been taken that by the terms of the bond the parties thereto constituted "the commission a board of arbitration" to determine the cost of the wye with "the power of ascertaining the facts, supervising the settlements, and reducing the bond accordingly." That defendants appreciate the difficulty of bringing the defense within any legal category is made plain in their printed brief. They affirmatively say that their position is "that the Public Utilities Commission must first determine the cost of the wye and liability under the bond and until such determination has been made * * * any action in any court to have such matters determined is premature. * * *" But they further say that "the defense is not that technically of another action pending," and further that "it is not strictly speaking an arbitration agreement," and still further that "it is not a case implying a condition precedent to sustain the present action." And thus only they attempt to dispose of appellant's argument that the pendency of the proceeding does not measure up to the requirements of any one of such defenses. But if the proceeding does not fall in some one of these categories, it is difficult to understand how it can be considered a legal defense at all.

■ Considering the last paragraph of the bond independently, we would have great difficulty in construing it or discerning its meaning, and neither side has manifested any great degree of confidence in attempting to interpret it. But upon resorting to the petition initiating the proceeding and the order made by the commission on the motion to dismiss, we find that we are spared the necessity of determining the full extent of the power which the parties intended thereby to confer. The prayer of the petition is that the bond be reduced as provided by the original order "to the amount necessarily and actually spent by the defendant (Railroad Company) in the construction" of the wye and that a like reduction be made in the total tonnage and price per ton to be shipped during the five-year period. Also that the bond

be modified so as to eliminate the provision for an annual settlement and in lieu thereof provide for a settlement to be made at the end of the five-year period; that the five-year period commence with the date when the wye was put into operation, and for other and further relief as may be deemed just and equitable. In ruling upon plaintiff's motion to dismiss for want of jurisdiction, the commission held that it "has jurisdiction to determine from the evidence the cost of the construction of the wye, and in case the cost of construction thereof is less than the principal sum named in said bond, this Commission should find the amount thereof and the amount due under the terms of said bond at the end of any 12 months period, but the Commission has no jurisdiction to modify, change, alter, or amend any of the terms or provisions in said bond except in this particular." Whether or not the commission thus took too narrow a view of its power, clearly we think the bond did not confer upon it authority to eliminate from the bond the clear and express provision for annual settlement or substitute in lieu thereof a provision that settlement be made only at the end of the five-year period. Nor did the commission have the power to alter that provision of the bond which expressly and clearly provides that the shipment period was to date from "the commencement of the operation of said line of railroad." Hence the only relief prayed for in the petition within the power of the commission was that which it held it had the authority to grant, namely, "to determine from the evidence the cost of the construction of the wye, and in case the construction thereof is less than the principal sum named in the bond * * * to find the amount thereof and the amount due under the terms of the bond at the end of any 12 months period." If it be conceded that by the indefinite phraseology of the last paragraph of the bond it was intended to confer upon the commission a measure of discretionary, administrative power, and further that in case of the application of the obligors to the commission for the exercise of that power no action could be brought in the courts until after the commission acted, the concession would be immaterial here for two reasons: The defendants are relying upon a petition in which no relief is prayed for within the competence of the commission other than such as would be within the jurisdiction of the courts to recognize and grant as a defense to an action brought by the railroad company upon the bond. And of course until the obligors have invoked the exercise of such power they cannot plead it in de-

fense; otherwise by remaining inactive they could postpone indefinitely and indeed entirely defeat the right of plaintiff to sue upon the bond. And, in the second place, even if we were of the opinion that the commission had the power to grant all the relief prayed for in the petition, it has disposed of all the prayer excepting that part relating to the actual cost of the wye, and that is the only matter now pending before that body.

It remains therefore to consider whether or not pendency of a petition praying that the commission determine the actual cost of the construction of the wye, and in case it is found that such cost is less than the estimated cost to scale down the obligation of the bond pro tanto, can be pleaded in bar or in abatement to an action on the bond. Undoubtedly such an issue is one of judicial cognizance, and if the pendency of the proceeding may be held to constitute any defense it must be upon the theory adopted in the court below that the provision of the bond is in the nature of an agreement for arbitration. It will be noted that nowhere in the bond is there any express stipulation committing such an issue to the commission. But if, as is not unreasonable, the last paragraph be construed as impliedly authorizing the commission to act as an arbitrator, it does not debar or prevent action in the courts. An agreement for arbitration does not have such effect unless it goes further and provides that action shall not be brought in the courts until after the arbitration proceeding takes place. That this is the rule defendants impliedly concede and seek to escape it by disclaiming the contention that the bond provision is "strictly speaking an arbitration agreement." "Where, however, the contract contains no covenant, express or implied, indicating an intention that arbitration of disputes shall be a condition precedent to a right of action, but there is simply a covenant to pay and another covenant to arbitrate, they are distinct and collateral, and the covenant to arbitrate is not in such a case a condition precedent." 9 C. J. 758. See, also, 5 C. J. p. 45; Hamilton v. Home Ins. Co., 137 U. S. 370, 383–386, 11 S. Ct. 133, 34 L. Ed. 708; Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 121, 44 S. Ct. 274, 68 L. Ed. 582; Tatsuuma Kisen, etc., v. Prescott (C. C. A.) 4 F.(2d) 670, 672.

With apparent confidence defendants rely upon our decision in Oregon-Washington Water Service Co. v. City of Hoquiam (C. C. A.) 28 F.(2d) 576; but there, it will be noted, the obligation of the purchaser was to be determined by a proceeding in court in case only the parties could not agree. In other words, judicial proceedings were to be available only in case of failure to agree and failure to agree implied a reasonable effort made in good faith. Without such effort the condition precedent specified by the contract had not been complied with.

Inasmuch as under the view we have taken of the principal question, the cause must go back with instructions for further proceedings, it becomes necessary to consider rulings touching the pleadings other than the order for judgment thereon.

The principals in the bond filed an answer and certain of the sureties a separate answer. To each of these pleadings the plaintiff, pursuant to the state practice, interposed a demurrer and a motion to strike out certain designated portions. After ruling upon the motion for judgment, the court denied the demurrers and motions without opinion. In a measure the rulings are within the reasoning of the order granting the motion for judgment which we have been unable to approve, but for the most part the matters challenged by the motion to strike as being frivolous or redundant are distinct therefrom.

We are unable to see how transactions prior to and conditions existing at the time the commission made its order for the wye can possibly constitute a defense. Questions of the necessity for the wye were conclusively disposed of by the order which all parties accepted. Nor are we able to see of what possible present concern it can be what it originally cost the Railroad Administration to build the spur line or what the plaintiff paid for it. In short, we are of the opinion that all allegations of matters occurring prior to the original proceeding before the commission are irrelevant and immaterial and should be stricken. In so far as the character and location of the wye were determined by the commission the order is conclusive. Otherwise the subject is open as a defense here, for plaintiff can recover only such amount as was actually and reasonably expended. It could not recover an expenditure unreasonably made for the purpose of oppressing the coal company.

It is also alleged that after the order for the wye was made the plaintiff put into effect discriminatory tariffs, to its disadvantage and to the advantage of its competitors in Wyoming and Utah. But it is not alleged that the rates were unlawful, and prima facie a published tariff is reasonable. In any view, that is a subject in the first instance for action by the Interstate Commerce Commission or the Public Utilities Commission of

Idaho. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Great Northern Ry. Co. v. Merchants Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943; L. & N. R. R. Co. v. United States, 238 U. S. 1, 35 S. Ct. 696, 59 L. Ed. 1177; Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, 26 S. Ct. 628, 50 L. Ed. 1011; Keogh v. C. & N. W. R. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183; Murray v. Public Utilities Commission, 27 Idaho, 603, 150 P. 47, L. R. A. 1916F, 756.

We are therefore of the opinion that all allegations in respect to discriminatory rates should be stricken.

 While we entertain grave doubt of the sufficiency to constitute any defense of that part of the answer which relates to an injunction suit brought by plaintiff against Cluff and others, we conclude that in declining to strike it out the lower court was not in error. It is scarcely necessary to add that the defense cannot be established without proof that the alleged action of the plaintiff was intended to interfere with, and did in fact interfere with, the defendants' mining operations and prevented them from furnishing coal tonnage.

Under the view we have taken as to the effect of the pendency of the proceeding before the commission for determination of the actual cost of the wye, it will also be necessary to allow the motion to strike all parts of the answer which are material only to that defense.

The same rule will, of course, apply to that part of the separate answer of the sureties in which a similar defense is interposed.

We are also of the view that the alleged separate defense of the sureties set out under what is designated as paragraph VIII is insufficient. The bond imposed no legal obligation on plaintiff to commence an action in court within any given period or to notify the sureties of the default of their principals. While perhaps it is suggested, estoppel is not sufficiently pleaded. If the defendants are advised that they can make a case of estoppel they may, upon application, be permitted to amend for that purpose.

There are some other features of the answers challenged upon the ground that they are not material or are conclusions of law, but they are not thought to be of sufficient importance to require discussion. Even if immaterial, they cannot be prejudicial.

The judgment is reversed, with directions to the lower court to dispose of plaintiff's motions and demurrers to the answers in harmony with the views herein expressed and to take further proceedings not inconsistent herewith, including permission to any of the parties to amend within a reasonable time.