**GASKINS et al. v. BONFILS et al.**

**BONFILS et al. v. GASKINS et al.**

**Nos. 1226, 1227.**

Circuit Court of Appeals, Tenth Circuit.

Sept. 11, 1935.

Rehearing Denied Oct. 22, 1935.

See, also, (D. C.) 4 F. Supp. 547.

Paul Barnett and John G. Madden, both of Kansas City, Mo. (Watson, Ess, Groner, Barnett & Whittaker, I. N. Watson, R. R. Brewster, T. J. Madden, Harry R. Freeman, and Harry G. Kyle, all of Kansas City, Mo., and Joel E. Stone, of Denver, Colo., on the brief), for appellants and reverse.

Henry L. Jost and Lester G. Seacat, both of Kansas City, Mo. (Robert L. Stearns, of Denver, Colo., on the brief), for appellees and reverse.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is a proceeding in equity in which two judgment creditors of a dissolved corporation assert and seek to enforce rights resulting from the distribution of the assets of the corporation as liquidating dividends.

The Post Printing & Publishing Company was incorporated under the laws of Missouri in 1917, with an authorized capital stock of $100,000 divided into 1,000 shares of the par value of $100 each. It printed and published the Kansas City Post, a newspaper of wide circulation. The name of the corporation was changed in 1922 to Star Printing & Publishing Company. J. Ogden Armour owned one-half of the stock, and F. G. Bonfils and H. H. Tammen owned one-fourth each. The stock owned by Armour was issued to Bonfils and Tammen as trustees, but they indorsed it in blank and delivered it to Armour. Bonfils transferred his stock to Boma Investment Company, a corporation which he caused to be organized under the laws of Colorado as his personal holding company and in which he and the immediate members of his family owned all of the stock to effect a more equitable method of paying his income taxes and to simplify the management of his properties in case of his death. The transfer was made without consideration, and in November, 1918, a substitute certificate issued directly to the corporation which it thereafter held in trust for Bonfils.

On May 17, 1922, the Star Printing & Publishing Company sold all of its assets and good will, except cash on hand, money on deposit in the post office at Kansas City, government bonds, and accounts receivable to Walter S. Dickey for $1,250,-000, payable in this manner: $250,000 in cash and four notes of $250,000 each due June 1, 1923, 1924, 1925, and 1926, respectively. The notes were paid in due course, and the money thus received, together with the sum realized from the remaining assets, amounted in the aggregate to $1,873,034.11.

After paying certain notes, accrued salaries, and income taxes, the remainder of the money was distributed to the stockholders as liquidating dividends. The sum thus paid to Boma Investment Company was $157,387.74, the last payment being made on June 4, 1926. Bonfils was a director and president of the corporation. He directed the sale of the assets and the distribution of the money, and all of it was removed outside the state. After the distribution was made, the corporation owned no assets, conducted no business, and subsequently forfeited its charter.

Florence Gaskins filed a suit against the corporation in the circuit court of Jackson county, Mo., during the year 1918 to recover damages for libelous matter published in the paper. That suit was dismissed and a new one was instituted in the United States Court for the Western District of Missouri in April, 1920. Judgment for plaintiff in the sum of $32,500 was rendered in that case on December 15, 1926. No appeal was taken and it became final. The court costs incurred in the case amounted to $37. Frank C. Seested filed a suit against the corporation in the circuit court of Jackson county in November, 1921, to recover damages for libelous matter published in the paper, and judgment for $200,-000 was rendered in his favor on November 18, 1926. The judgment was affirmed by the Supreme Court of the state on condition that a remittitur of $75,000 be filed. Seested v. Post Printing & Pub. Co., 326 Mo. 559, 31 S.W.(2d) 1045. That was done and the judgment of $125,000 became final from the date of its original entry. The court costs incurred in the case were $67.15. Both judgments bear interest at 6 per cent. per annum. An execution was issued upon each of them and returned nulla bona.

Plaintiff Gaskins instituted this action in the court below in the nature of a creditor's bill against Bonfils, Boma Investment Company, Dome Investment Company, F. G. Bonfils Foundation for the Benefit of Mankind, and the Post Printing & Publishing Company, a Colorado corporation, to impress a trust upon the funds distributed to Bonfils and under his direction paid to Boma Investment Company. She sought in addition to establish his liability for breach of trust as a director in causing distribution of the other funds to Armour and Tammen as liquidating dividends. Seested intervened. Bonfils died pending the suit and the executors of his will were made parties. Virtually all of the allegations contained in the bill were denied, and it was alleged by way of cross-bill that although plaintiff and intervener had no meritorious cause of action, they had instituted suits in Missouri and in Colorado; that they had inspired the receiver of the dissolved corporation to file a similar one in Missouri; that they had caused numerous writs

of attachment to issue; and that they had otherwise vexed and harrassed the defendants for the sole purpose of compelling payment of their judgments. An injunction was sought to restrain the further prosecution of such pending suits, the institution of new ones, and the continuation of the harrassment.

The trial court dismissed the bill as to the defendants Dome Investment Company, F. G. Bonfils Foundation for the Benefit of Mankind, and the Post Printing & Publishing Company of Colorado; established a trust in favor of plaintiff and intervener against the executors and Boma Investment Company for the $157,387.74 received as a liquidating dividend, in the order of $32,492.32 to Gaskins and $124,895.42 to Seested; denied interest upon such trust fund; and determined that there was no liability for breach of trust in Bonfils directing payment of the liquidating dividends to Armour and Tammen.

Plaintiff and intervener appealed from those provisions in the decree denying interest and denying recovery for breach of trust in payment of the dividends to the other stockholders. The executors and Boma Investment Company perfected a cross-appeal from that part establishing and enforcing the trust.

■ The respective claims of plaintiff and intervener were being asserted and separate suits for their enforcement were pending at the time the corporation sold its assets and ceased the promotion of its business. The corporation and Bonfils had full knowledge of that fact. The money received from the sale became subject to an equitable lien in the nature of a trust for the payment of the corporate debts. The rights of creditors to it were superior to those of stockholders. The directors held it in trust for that purpose and its distribution among its stockholders as a liquidating dividend did not free it of that trust. Creditors of a dissolved corporation may follow distributed assets into the hands of stockholders and require them to respond each to the extent of the value of his distributive share. A judgment creditor's bill for that purpose is in effect an equitable execution. Curran v. Arkansas, 15 How. 304, 14 L. Ed. 705; Pierce v. United States, 255 U. S. 398, 41 S. Ct. 365, 65 L. Ed. 697; United States v. Garbutt (C. C. A.) 35 F. (2d) 924; Sutton Manufacturing Co. v. Hutchinson (C. C. A.) 63 F. 496; McWilliams v. Excelsior Coal Co. (C. C. A.) 298

F. 884; Updike v. United States (C. C. A.) 8 F.(2d) 913; Hatch v. Morosco Holding Co. (C. C. A.) 50 F.(2d) 138; Singer v. Hutchinson, 183 Ill. 606, 56 N. E. 388, 75 Am. St. Rep. 133; Brewer v. Michigan Salt Ass'n, 58 Mich. 351, 25 N. W. 374; State v. Circuit Court, 184 Wis. 301, 199 N. W. 213; Martin v. City of Lexington, 183 Ky. 714, 210 S. W. 483.

■ The trial court determined that the extent of the recovery to which plaintiff and intervener were entitled was limited to the dividend paid to Bonfils and Boma Investment Company without interest added. The action in disallowing interest is challenged. The sum of $157,387.74 was paid them in cash. The last payment was made more than nine years ago. The fund was then and at all times since has been subject to a trust for the payment of the debts of the corporation, including the claims subsequently reduced to judgment and asserted here. Despite the fact that it was impressed with a trust for that purpose, they received it, commingled it with other funds, and have used it in their business ever since. They had only a secondary right to it in the first place and have retained it in the face of the prolonged and vigorous effort of plaintiff and intervener to enforce their superior right to it, that is payment of their judgments out of it. Had the distribution been made in property, any increment would have become a part of the trust estate. In like manner, profits earned upon money thus distributed become a part of the trust fund. The record is silent in respect to the profit which the trust fund has returned. Neither party offered evidence upon that question. In the absence of proof, a court of equity may assume that the fund earned an increment equal to interest computed at the legal rate and require the trustee to respond accordingly. That is in harmony with the wholesome rule of universal recognition that a fiduciary cannot harvest any personal gain from the trust beyond his lawful compensation. Any other doctrine would permit a trustee to withhold trust funds upon sheer pretext and profit by their use in his private business until compelled to surrender them. It would lure a fiduciary to faithless conduct and would stamp a premium of enrichment upon breach of trust. Equity will not lend itself to that end and consequently interest has been frequently exacted from the trustee of a constructive trust. McWilliams v. Excelsior Coal Co., supra;

Silver King Coalition Mines Co. v. Silver King Consolidated Mining Co. (C. C. A.) 204 F. 166, Ann. Cas. 1918B, 571; United Hay Co. v. Ford (Tex. Civ. App.) 81 S.W. (2d) 776; Childs, Jeffries & Co. v. Bright, 283 Mass. 283, 186 N. E. 571; 16 Fletcher Cyclopedia Corporations, § 8161. The same rule has been applied in repeated instances of an express trust. In re Thompson's Estate, 101 Cal. 349, 35 P. 991, 36 P. 98, 508; Title Ins. & Trust Co. v. Ingersoll, 158 Cal. 474, 111 P. 360; Bobb v. Bobb, 89 Mo. 411, 4 S. W. 511; St. Paul Trust Co. v. Kittson, 62, Minn. 408, 65 N. W. 74; Spruance v. Equitable Trust Co., 12 Del. Ch. 12, 103 A. 577; McDonald v. Hartford Trust Co., 104 Conn. 169, 132 A. 902; Reed v. Taliaferro, 37 Wyo. 107, 259 P. 815, 55 A. L. R. 941. And a court of equity may, in the exercise of its sound discretion, allow interest upon equitable considerations even though it could not be recovered at law. Woerz v. Schumacher, 161 N. Y. 530, 56 N. E. 72; Blun v. Mayer, 189 N. Y. 153, 81 N. E. 780; Tuzzeo v. American Bonding Co., 226 N. Y. 171, 123 N. E. 142.

■ The Post Printing & Publishing Company caused delay in the prosecution of the suits · in Missouri. It employed dilatory methods for that manifest purpose. Bonfils was its president and he had knowledge of that fact. He and Boma Investment Company have stubbornly resisted payment of the judgments out of the trust fund. For about ten years they have used and enjoyed the fund with which the judgments should have been paid. In these circumstances, we think plain considerations of equity, justice, and conscience require that a sum equal to interest on the fund at the rate of 6 per cent. per annum since June 4, 1926, that being the date on which the last payment was made to them, be added as an increment to the trust estate. Anything less would be inequitable.

It is further contended that Bonfils was liable for breach of trust as a director in causing distribution of the dividends to Armour and Tammen. The dividend which he and Boma Investment Company received with the increment, just adverted to, exceeds the sum of the two judgments with interest and costs. That enables plaintiff and intervener to have full recovery without reference to personal liability for directing payment of the dividends to the other stockholders and renders it unnecessary to decide that question. It likewise eliminates the necessity to consider the argument that the bill is multifarious because it seeks to impound the assets distributed to Bonfils and Boma Investment Company and at the same time establish personal liability on the part of Bonfils for directing distribution of the remaining assets. And it becomes unnecessary to give extended consideration to section 4569, Revised Statutes of Missouri 1929 (Mo. St. Ann. § 4569, p. 2015). That statute deals exclusively with the personal liability of directors if they knowingly declare and pay a dividend when the corporation is insolvent or in such condition that such payment renders it insolvent. It has no application to the liability of a stockholder to respond for the value of dividends received in the process of liquidation.

■ We come now to the cross-appeal. It is urged that the respective judgments in suit are of no greater equitable rank or higher dignity than the claims upon which they are founded; that they are founded on unliquidated claims sounding in tort and consequently were not debts of the corporation within the meaning of the law of Missouri upon which a creditor's bill could be predicated for recovery out of distributed assets. The contention was completely answered in Pierce v. United States, supra. There a corporation was convicted and sentenced to pay a fine for receiving rebates in violation of the Elkins Act (49 US CA §§ 41–43). It was held that the judgment could be recovered out of distributed assets in the hands of a stockholder. The argument advanced here counters with the holding in that case. No sound reason is perceived why the holder of a valid claim arising out of tort which is being pressed at the time the assets are distributed and which is subsequently reduced to judgment should be denied the right to pursue such assets and enforce payment of the judgment out of them.

■ The right of plaintiff and intervener to proceed in equity is contested on the ground that they had an adequate remedy at law in Missouri which they failed to invoke. It is said that the funds of the corporation which were about to be distributed as liquidating dividends could have been attached, their distribution prevented and their availability preserved for payment of any judgment thereafter recovered. It is not shown that plaintiff or intervener knew that the funds belonging to the corporation were about to be distributed and in that manner removed from the state or other-

wise made unavailable for payment of the claims then in suit. It is suggested that the press must have given publicity to the fact that the paper had been sold, from which it should have been anticipated that the assets would be distributed as liquidating dividends. A court of equity cannot deny relief to judgment creditors in the pursuit of trust property upon such speculation. Furthermore, the amount sued for in each case was substantial and recovery in a case of that kind is always speculative. A large bond would have been required and a real hazard would have attached to the giving of it. The remedy provided by law was not adequate in the circumstances. Furthermore, the contention ignores the plain duty which rested upon Bonfils as a director to retain sufficient of the corporate assets intact for the payment of all outstanding debts. The present situation results directly from his disregard of that duty.

Laches is urged. It is said that plaintiff and intervener failed and neglected to prosecute their respective suits against the Post Printing & Publishing Company with diligence. The actions were instituted within the statutory period. Accordingly, the burden was on defendants to plead and prove extraordinary circumstances which require the application of the doctrine. Kelley v. Boettcher (C. C. A.) 85 F. 55; Warner v. Citizens' Nat. Bank (C. C. A.) 267 F. 661; Columbian Nat. Life Ins. Co. v. Black (C. C. A.) 35 F.(2d) 571, 71 A. L. R. 128; City of Roswell v. Mountain States Tel. & Tel. Co. (C. C. A.) 78 F. (2d) 379. They failed to do that. Furthermore, much of the delay in the prosecution of suits was caused by the corporation. It filed an affidavit of disqualification against the judge of the court in one of the cases and that necessitated a delay until an additional judge was appointed. Two of its officers refused to answer interrogatories propounded in the course of the taking of their depositions and secured writs of habeas corpus for their release from commitment for contempt therefor. It employed various dilatory tactics. One who contributes to delay cannot afterwards assert it as laches. Spiller v. St. Louis & S. F. R. Co. (C. C. A.) 14 F.(2d) 284, and cases there cited. In addition to what has been said, the trial court here expressly found that plaintiff and intervener had not caused undue delay. in the prosecution of those cases and that finding is supported by substantial evidence. This court has repeatedly held that a finding of fact made in an equity case is presumptively correct and will not be disturbed on appeal unless a clear mistake was made in the consideration of the evidence. Youngblood v. Magnolia Petroleum Co. (C. C. A.) 35 F.(2d) 578; Jonah v. Armstrong (C. C. A.) 52 F.(2d) 343; Jackson v. Jackson (C. C. A.) 67 F.(2d) 719; Standard Oil of Colorado v. Standard Oil Co. (C. C. A.) 72 F.(2d) 524; Gorman v. Shaffer Oil & Refining Co. (C. C. A.) 74 F.(2d) 610; Humphrey v. Bankers Mortgage Co. (C. A.) 79 F.(2d) 345. No serious mistake of that kind is shown here.

Finally, it is said that the net distributive dividend paid to Bonfils and Boma Investment Company was only $148,787.63 and that if plaintiff and intervener prevail the decree should be adjusted to conform to that sum. The trial court made certain deductions and found that the net amount was $157,387.74. That finding is supported by substantial evidence. In fact, it is sustained by the unqualified testimony of an accountant who had been employed by Bonfils for several years and neither his competency nor fairness is questioned. Under the authorities just cited, the finding cannot be overturned.

The decree is modified by increasing the amount due Florence Gaskins to $32,-537 with interest thereon from December 15, 1926, at 6 per cent. per annum, and by increasing the amount due Frank C. Seested to $125,067.15 with interest thereon from November 18, 1926, at 6 per cent. per annum; and as thus modified, it is affirmed.